**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------X

MALIK FRYAR,                                     )
                                                 )
                          Plaintiff,             )
                                                 )
           -against-                             )
                                                 )         **10 Civ. 5879 (TLM) (MDG)**
                                                 )
THE CITY OF NEW YORK, et al.,                    )
                                                 )
                          Defendants.            )
------------------------------------------------------------X


**MEMORANDUM OF LAW IN SUPPORT OF MOTION
FOR ATTORNEYS' FEES AND COSTS**


**HARVIS & SALEEM LLP**
AFSAAN SALEEM, ESQ.
GABRIEL P. HARVIS, ESQ.
305 Broadway, 14th Floor
New York, New York 10007
*Attorneys for Plaintiff*


October 21, 2011

# TABLE OF CONTENTS

**Page**

INTRODUCTION AND PROCEDURAL HISTORY ................................................................ 1

THE COURSE OF THE LITIGATION ................................................................ 2

ARGUMENT ................................................................ 4

    PLAINTIFF SHOULD RECOVER HIS FULL ATTORNEYS' FEES AND COSTS FOR THE WORK PERFORMED ON THE LITIGATION AND THE INSTANT FEE APPLICATION ................................................................ 4

        A.    Plaintiff Is a Prevailing Party Entitled to Costs, Including Reasonable Attorneys' Fees ................................................................ 4

        B.    The "Lodestar" Method of Determining a Reasonable Fee ..................... 5

        C.    The Hourly Rates Requested Are Reasonable ......................................... 11

            1.  Mr. Saleem's Hourly Rate ................................................................ 11

            2.  Mr. Harvis's Hourly Rate ................................................................ 17

            3.  Hourly Rates for Paralegal Tasks and Travel ..................................... 20

        D.    The Time Expended By Plaintiff's Counsel Was Reasonable .................. 20

        E.    Plaintiff Is Entitled to Recover Reasonable Out-of-Pocket Expenses ................................................................ 22

CONCLUSION ................................................................ 23

## TABLE OF AUTHORITIES

**Case**                                                                                                        **Pages**

*A.R. v. N.Y. City Dept. of Educ.*, 407 F.3d 65 (2d Cir. 2005) ........................................................ 11

*Allende v. Unitech Design, Inc.*, __ F.Supp.2d ___, 2011 WL 891445 (S.D.N.Y. 2011) .............. 6

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182
 (2d Cir. 2007)...................................................................................................................... 6, 10, 16

*Artemide Inc. v. Spero Elec. Corp.*, 09-CV-1110 (DRH) (ARL), 2010 WL 5452075
 (E.D.N.Y. Nov. 23, 2010)............................................................................................................ 19

*Balkanli v. City of New York*, 07-CV-2204 (NG), 2009 WL 1346736 (E.D.N.Y. May 14,
 2009) ............................................................................................................................................ 19

*Banco Centrale v. Paraguay Humanitarian Found.*, 2007 WL 747814 (S.D.N.Y. Mar. 2,
 2007)............................................................................................................................................. 16

*Barbour v. City of White Plains*, __F.Supp.2d___, 2011 WL 2022884 (S.D.N.Y. 2011)............ 9

*Blanchard v. Bergeron*, 489 U.S. 87, 109 S. Ct. 939 (1989) ......................................................... 7

*Blount v. City of New York*, 11-CV-124 (BMC) ............................................................................ 17

*Blum v. Stenson*, 465 U.S. 886, 104 S. Ct. 1541 (1984) ...................................................... 7, 8, 19

*Builders Bank v. Rockaway Equities, LLC*, 08-CV-3575 (MDG), 2011 WL 4458851 ............... 20

*Carmichael v. City of New York*, 06-CV-1913 (NG) (VVP) ......................................................... 19

*Carroll v. Blinken*, 105 F.3d 79, 81 (2d Cir. 1997)......................................................................... 9

*City of Riverside v. Rivera*, 477 U.S. 561 (1986) ................................................................... 1, 8, 9

*Cruz v. Local Union No. 3 of the IBEW*, 34 F.3d 1148, 1161 (2d Cir. 1994).............................. 20

*Davis v. City of New Rochelle*, 156 F.R.D. 549 (S.D.N.Y. 1994) ............................................... 21

*Dick v. The Gap, Inc.*, 16 A.D.3d 615 (2nd Dept. 2005) .............................................................. 11

*Dixon v. Ragland*, 03-CV-826 (LTS) (KNF)................................................................................ 19

*D'Onofrio v. City of New York*, 11 N.Y.3d 581 (2008)................................................................ 12

*Estes v. City of New York*, 01-CV-5158 (SLT)............................................................................. 13

*Farrar v. Hobby*, 506 U.S. 103 (1992) ........................................................................................... 5

**Case**                                                                      **Pages**

*Foster v. Kings Park Central Sch. Dist.*, 174 F.R.D. 19 (E.D.N.Y. 1997) .................................... 8

*Gagne v. Maher*, 594 F.2d 336 (2d Cir. 1979) ........................................................................ 21

*Garcia v. City of New York*, 07-CV-4331 (SJF) (RER) .............................................................. 19

*Gordon v. Site 16/17 Development, LLC*, 11-CV-427 (RMB)(AJP), 2011 WL 3251520
    (S.D.N.Y. July 28, 2011) ........................................................................................................ 6

*Grant v. City of New York*, 07-CV-869 (ENV) (LB), 2008 WL 4646158 (E.D.N.Y. Oct.
    20, 2008) ................................................................................................................................ 19

*Green v. City of New York,* 01-CV-1996 (RMB), 2007 WL 2584752 (S.D.N.Y. Sept. 6, 2007),
    remanded, 359 F. App'x 197 (2d Cir. 2009), *cert. denied*, 131 S. Ct. 125 (2010)
    ................................................................................................................................................ 13

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ................................................................ 1, 4, 6, 20

*In re Agent Orange Products Liability Litigation*, 818 F.2d 226 (2d Cir. 1987) ......................... 10

*In re Merrill Lynch v. Research Securities Litigation*, 2007 WL 313474 (S.D.N.Y. Feb.
    1, 2007) .................................................................................................................................. 16

*Integrated Marketing v. JEC Nutrition*, 2007 WL 840304 (S.D.N.Y. Mar. 19, 2007) ............... 16

*Interfaith Community Org. v. Honeywell*, 426 F.3d 694 (3d Cir. 2005) ..................................... 16

*Jin v. Pacific Buffet House, Inc.*, 06-CV-579 (VVP), 2010 WL 2653334 (E.D.N.Y. June
    25, 2010) .................................................................................................................................. 6

*Johnson v. Georgia Highway Express*, 488 F. 2d 714 (5th Cir. 1974) ..................................... 5, 6

*Kassim v. City of Schenectady*, 415 F.3d 246, 252 (2d Cir. 2005) ............................................. 9

*Laffey v. Northwest Airlines*, 572 F. Supp. 354 (D.D.C. 1983), *aff'd*, 746 F.2d 4 (D.C.
    Cir. 1984) ................................................................................................................................ 16

*LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748 (2d Cir. 1998) ......................................... 7, 11, 22

*Lopez v. Joshua*, 08-CV-1871 (DGT) (VVP) .................................................................. 3, 14, 19

*Luciano v. Osten Corp.*, 109 F.3d 111 (2d Cir. 1997) .................................................................. 6

*Majors v. City of New York*, 10-CV-4730 (BMC) .................................................................. 3, 15

*McBean v. City of New York*, 02-CV-5426 (JGK) (THK) ............................................... 12, 13, 18

**Case**                                                                                                          **Pages**

*Millea v. Metro-North R.R. Co.*, ___F.3d____, 2011 WL 3437513 (2d Cir. 2011) ................ 9, 10

*Missouri v. Jenkins*, 491 U.S. 274 (1989) ..................................................................................... 8

*Natural Resources Defense Council, Inc. v. Fox*, 129 F. Supp. 2d 666 (S.D.N.Y. 2001) ........... 21

*New York State Ass'n for Retarded Children v. Carey*, 711 F.2d 1136 (2d Cir. 1983) ......... 20, 21

*Palopoli v. City of New York*, 305 A.D.2d 388 (2nd Dept. 2003) ................................................. 12

*Pennsylvania v. Delaware Valley Citizens' Council*, 478 U.S. 546 (1986) ................................... 7

*Perdue v. Kenny A.*, __U.S.__, 130 S. Ct. 1662 (2010) .......................................................... *passim*

*Quaratino v. Tiffany & Co.*, 166 F.3d 422, 424 (2d Cir. 1999) ..................................................... 9

*Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170 (2d Cir. 1996) ...................................................... 21

*Reiter v. MTA N.Y. City Transit Auth.*, 457 F. 3d 224 (2d Cir. 2006) ......................................... 11

*Robertson v. Sullivan*, 07-CV-1416 (JG) (LB) ........................................................................... 19

*Rodriguez v. Pressler & Pressler, LLP*, 2009 U.S. Dist. LEXIS 20655 (E.D.N.Y. Mar. 16, 2009) ................................................................................................................................. 17

*Sanders v. N.Y.C. Dep't of Corrections*, 07-CV-3390 (SHS), 2009 WL 222161 (S.D.N.Y. Jan. 30, 2009), *aff'd*, 376 Fed.Appx. 151 (2d Cir. 2010) ...................................... 19

*Santoro v. City of New York*, 795 N.Y.S.2d 60 (2nd Dept. 2005) ............................................... 11

*Szczepanek v. Dabek,* 10-CV-2459 (SJF) (ARL), 2011 WL 846193 (E.D.N.Y. Mar. 7, 2011) ..................................................................................................................................... 20

*Shepherd v. Law Offices of Cohen & Slamowitz*, 2010 U.S. District LEXIS 125224 (S.D.N.Y. Nov. 29, 2010) ...................................................................................................... 6

*Stephen v. Hanley*, 376 Fed.Appx. 158 (2d Cir. 2010), *cert. denied*, 131 S. Ct. 795 (2010) ..................................................................................................................................... 14

*Thorsen v. County of Nassau*, 03-CV-1022 (ARL), 2011 WL 1004862 (E.D.N.Y. Mar. 17, 2011) .............................................................................................................................. 17, 19

*Trichilo v. Secretary of Health & Human Servs.*, 823 F.2d 702 (2d Cir. 1987), *reaff'd and extended*, 832 F.2d 743 (2d Cir. 1987) ............................................................................. 21

*Trustees of the N.Y. Oil Hearing Ins. Fund v. Anchor Tank Lines*, 2011 U.S. Dist. LEXIS 22041 (S.D.N.Y. March 4, 2011) ................................................................................ 6

**Case**                                                              **Pages**

*U.S. Football League v. National Football League*, 887 F.2d 408 (2d Cir. 1989)...................... 22

*Wilson v. McMullen*, 07-CV-948 (SLT) (LB), 2010 WL 1268055 (E.D.N.Y. Mar. 30, 2010) ..................................................................................................................... 19

*Zhao v. City of New York*, 07-CV-3636 (LAK) (MHD) .............................................. 14

## INTRODUCTION AND PROCEDURAL HISTORY

Malik Fryar was referred to Harvis & Saleem LLP immediately after his criminal charges were adjourned in contemplation of dismissal in November 2010.  His arrest had arisen out of an incident on November 7, 2010, when he was attempting to cross Neptune Avenue in Coney Island, Brooklyn.  As plaintiff was crossing the street, he encountered the defendant police officers who had just arrested, and were in the process of transporting, two other individuals, one of whom was a childhood friend of plaintiff.  As the police car carrying his friend drove past him, Mr. Fryar gave a colloquial version of a peace sign to his friend in the back seat.  The police vehicle stopped and the defendants placed Mr. Fryar under arrest.  After spending seventeen hours in custody, the criminal charges against Mr. Fryar were adjourned in contemplation of dismissal at his arraignment.  Declaration of Afsaan Saleem in Support of Plaintiff's Motion for Attorneys' Fees and Costs, October 21, 2011, ("Saleem Decl.") at ¶ 24.

Plaintiff commenced this action by filing a Complaint on December 20, 2010.  After over nine months of litigation, and a jury trial, on September 22, 2011, the jury awarded plaintiff $100.00 in compensatory damages on his federal false arrest and state law false imprisonment claims against two of the individual defendants and the City of New York, as well as $500.00 in punitive damages against one of the individual defendants.  Saleem Decl. ¶¶ 24 and 29, and Exhibit A thereto.

Judgment having been entered in plaintiff's favor, he is a prevailing party in this Section 1983 suit, and is entitled to attorneys' fees and costs of the litigation under Section 1988 and Rule 54(d) of the Federal Rules of Civil Procedure.  *See Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983).  Moreover, in securing a verdict in a police misconduct case, plaintiff has contributed value to the public in deterring such conduct in the future.  *See City of Riverside v. Rivera*, 477 U.S. 561, 575 (1986).

At no point in this litigation, before, during or after the trial, did defendants ever make an offer to settle this case or plaintiff's claim for attorneys' fees.  Plaintiff, on the other hand, fully engaged in efforts to settle, including providing defendants' counsel with a demand before the initial conference and then unilaterally lowering his demand in an attempt to incentivize settlement prior to the commencement of intensive trial preparations.  Despite plaintiff's efforts, defendants declared, in April 2011 and again in August 2011, that defendants would not settle the case, and that they were prepared to proceed to trial.  During jury deliberations, which spanned two days, at the suggestion of the Honorable Tucker L. Melançon to revisit the issue of settlement, plaintiff reaffirmed his willingness to discuss settlement.  Defendants for a third time refused to engage in settlement discussions.  After Judgment was entered, and pursuant to the Court's order that the parties attempt to settle fees and costs, plaintiff provided defendants with records reflecting the time expended and the costs incurred by plaintiff's counsel prosecuting the matter, with significant reductions and "billing judgment" exercised.  The defendants refused to make an offer of settlement.  Therefore, defendants are fully responsible for the number of hours accrued by plaintiff's counsel in prosecuting this case through trial and the instant fee application.  Saleem Decl. ¶¶ 30-31.

## THE COURSE OF THE LITIGATION

Mr. Saleem's pre-filing preparation of the case involved meeting with the plaintiff, consulting with the referring attorney and attempting to obtain video of the incident from a nearby supermarket.  He reviewed the criminal charges against plaintiff and prepared the complaint.  He prepared discovery requests and responded to defendants' interrogatories and document requests.  Saleem Decl.¶ 25.

There were a total of five depositions conducted in this case.  Mr. Saleem, along with his law partner Gabriel P. Harvis, prepared the plaintiff for his deposition.  He also prepared for and took the depositions of the four individual defendant police officers.  Saleem Decl. ¶ 26.

Mr. Saleem attended the initial conference and, along with Mr. Harvis, two pre-trial conferences before the Honorable Brian M. Cogan.  Mr. Saleem successfully moved for reconsideration of an order by Judge Cogan imposing sanctions following a discovery dispute with defendants, leading Judge Cogan to vacate the sanctions order.  Once it became clear that defendants would not consider settlement of the case on any terms, Mr. Harvis joined Mr. Saleem as co-counsel in the case to prepare for trial.  Saleem Decl. ¶ 27; Declaration of Gabriel P. Harvis in Support of Plaintiff's Motion for Attorneys' Fees and Costs, October 21, 2011, ("Harvis Decl.") at ¶¶ 4 and 16.  Mr. Harvis is an experienced civil rights litigator with whom Mr. Saleem has tried two other § 1983 civil rights cases in the Eastern District of New York.  *See Lopez v. Joshua*, 08-CV-1871 (DGT) (VVP); *Majors v. City of New York*, 10-CV-4730 (BMC).

Mr. Saleem and Mr. Harvis prepared the case for jury trial.  This included preparation, submission and filing of a Joint Pre-Trial Order; the submission of pre-trial motions *in limine* and resolution of those motions by the Court; the submission of proposed voir dire and jury instructions; and all of the other necessary preparations for a jury trial, including preparation of an opening statement and direct and cross examinations of the parties, as well as the examination of the non-party witness from the Kings County District Attorney's Office.  Saleem Decl. ¶ 28; Harvis Decl. ¶ 18.

Mr. Saleem and Mr. Harvis conducted jury selection before the Honorable Joan M. Azrack on September 12, 2011, and tried the case before Judge Melançon from September 19, 2011 through September 20, 2011.  Following a charging conference and summations on

3

September 21, 2011, the jury deliberated until September 22, 2011, when it returned a plaintiff's verdict on plaintiff's false arrest and false imprisonment claims as to two of the defendants and awarded $100.00 in compensatory damages.  The jury was then charged on punitive damages and, after six minutes of deliberations, awarded plaintiff $500.00 in punitive damages against defendant Robert Zhen.  Saleem Decl. ¶ 29 and Exhibit A.

Plaintiff seeks attorneys' fees for all work performed through the end of the trial, and for preparation of the instant fee application.  Mr. Saleem and Mr. Harvis have submitted contemporaneous, detailed time records specifying the work performed on this case.  Saleem Decl. Exhibit B.  If appropriate, plaintiff will supplement this application at the time of filing any Reply brief on this motion, and thereafter as necessary.  Saleem Decl. ¶ 32 n.2; Harvis Decl. ¶¶ 19-20.  Plaintiff also seeks costs and expenses for paralegal tasks performed by the attorneys and for out-of-pocket expenditures.  Saleem Decl. ¶¶ 32-34 and 42, Exhibit B; Harvis Decl. ¶¶ 19-20.

<u>**ARGUMENT**</u>

**PLAINTIFF SHOULD RECOVER HIS FULL ATTORNEYS' FEES AND COSTS FOR THE WORK PERFORMED ON THE LITIGATION AND THE INSTANT FEE APPLICATION**

**A.** <u>**Plaintiff Is A Prevailing Party Entitled to Costs, Including Reasonable Attorneys' Fees**</u>

42 U.S.C. § 1988 provides that "[i]n any action or proceeding to enforce a provision of section[]…1983 [of this title]…the court, in its discretion, may allow the prevailing party…a reasonable attorney's fee as part of the costs."  While the statute invokes the court's discretion, there is a presumption that prevailing civil rights plaintiffs should recover reasonable attorneys' fees, unless special circumstances would render such an award unjust.  *See Hensley*, 461 U.S. at 429.

A plaintiff is considered the "prevailing party" if he "succeed[s] on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Id.* at 433. Here, Mr. Fryar unquestionably meets that standard as the jury rendered a verdict in his favor on his principal claims of false arrest and false imprisonment and awarded him punitive as well as compensatory damages. *See Farrar v. Hobby*, 506 U.S. 103, 113 (1992) (A plaintiff who obtains compensatory damages is a prevailing party because "[a] judgment for damages in any amount, whether compensatory or nominal, modifies the defendant's behavior for the plaintiff's benefit by forcing the defendant to pay an amount of money he otherwise would not pay."); *Cf. Lee v. Edwards*, 101 F.3d 805, 808 (2d Cir. 1996) ("Punitive damages are available in a § 1983 action when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves callous indifference to the federally protected rights of others." (internal quotation omitted)).

**B.**     **The "Lodestar" Method of Determining a Reasonable Fee**

As the Supreme Court has recently remarked, Section 1988 "does not explain what Congress meant by a 'reasonable' fee, and therefore the task of identifying an appropriate methodology for determining a 'reasonable' fee was left for the courts." *Perdue v. Kenny A.*, __ U.S. __, 130 S. Ct. 1662, 1669 (2010). In *Perdue*, the Court tackled that task anew, contrasting the various methodologies used by the lower courts, and settling upon the "lodestar" approach for determining the reasonable fee, in contrast to the so-called "*Johnson* approach" (which relied upon a list of twelve factors set out in *Johnson v. Georgia Highway Express*, 488 F.2d 714, 717-19 (5th Cir. 1974)). The problem with the *Johnson* approach, said the Supreme Court, was that it set "attorneys' fees by reference to a series of sometimes subjective factors [that] placed

unlimited discretion in trial judges and produced disparate results." *Perdue*, 130 S. Ct. at 1672 (citation omitted).[1]

The Supreme Court pointed out that the "lodestar approach…achieved dominance in the federal courts after our decision in *Hensley*. Since that time, the lodestar figure has, as its name suggests, become the guiding light of our fee-shifting jurisprudence." *Id.* (citations and quotations omitted). As the Court declared:

> Although the lodestar method is not perfect, it has several important virtues. First, in accordance with our understanding of the aim of fee-shifting statutes, the lodestar looks to "the prevailing market rates in the relevant community." Developed after the practice of hourly billing had become widespread, the lodestar method produces an award that *roughly* approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case. Second, the lodestar method is readily administrable; and unlike the *Johnson* approach, the lodestar calculation is "objective," and thus cabins the discretion of trial judges, permits meaningful judicial review, and produces reasonably predictable results.

*Id.* (citations omitted, emphasis in original).

When the Court adopted the lodestar approach in *Hensley*, it stated: "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This calculation provides an objective basis on which to make an initial estimate of the value of the lawyer's services." *Hensley*, 461 U.S. at 437; *Luciano v. Osten Corp.*, 109 F.3d 111 (2d Cir. 1997).

---

[1] Plaintiff submits that insofar as *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182 (2d Cir. 2007), a pre-*Perdue* decision, discusses how to determine a reasonable hourly rate, it is at odds with the holding and reasoning of *Perdue*. *Arbor Hill* abandoned the lodestar and emphasized the *Johnson* factors – an approach explicitly rejected by the Supreme Court. *Perdue*, 130 S. Ct. at 1672. *See Gordon v. Site 16/17 Development, LLC*, 11-CV-427 (RMB)(AJP), 2011 WL 3251520 at *5, n.11 (S.D.N.Y. July 28, 2011); *Allende v. Unitech Design, Inc.*, __ F.Supp.2d ___, 2011 WL 891445 at *3, n.4 (S.D.N.Y. 2011); *Trustees of the N.Y. Oil Heating Ins. Fund v. Anchor Tank Lines*, 09-CV-9997 (DLC) (AJP), 2011 WL 767162, *4, n.7 (S.D.N.Y. March 4, 2011); *Shepherd v. Law Offices of Cohen & Slamowitz*, 08-CV-6199 (CM) (LMS), 2010 WL 4922314 at *2 (S.D.N.Y. Nov. 29, 2010); *Jin v. Pacific Buffet House, Inc.*, 06-CV-579 (VVP), 2010 WL 2653334 at *2, n.2 (E.D.N.Y. June 25, 2010).

With respect to determining the reasonable hourly rate, "the lodestar looks to 'the prevailing market rates in the relevant community.'"  *Perdue* 103 S. Ct. at 1672 (quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984)).  In *Blum*, Legal Aid Society attorneys had represented the prevailing civil rights plaintiffs, and the issue presented was how to set a reasonable hourly rate under § 1988.  The *Blum* court started by examining § 1988's legislative history, noting that "Congress directed that attorney's fees be calculated according to standards currently in use under other fee-shifting statutes: 'It is intended that the amount of fees awarded under [§ 1988] be governed by the same standards which prevail in other types of equally complex Federal litigation, such as antitrust cases.'"  *Blum*, 465 U.S. at 893 (quoting S. Rep. No. 94-1011, p. 6 (1976)).  The Court continued,

> the critical inquiry in determining reasonableness is now generally recognized as the appropriate hourly rate…To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence – in addition to the attorney's own affidavits – that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.  A rate determined in this way is normally deemed to be reasonable, and is referred to – for convenience – as the prevailing market rate.

*Id.* at 898.

*Perdue* describes a reasonable fee, set at the "prevailing market rate in the relevant community," as one "that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case."  *Perdue*, 130 S. Ct. at 1672 (citing *Pennsylvania v. Delaware Valley Citizens' Council*, 478 U.S. 546, 565 (1986)); *Blanchard v. Bergerson*, 489 U.S. 87, 94 (1989); *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 764 (2d Cir. 1998).  Because civil rights litigation is risky, defendants often win at trial, and contingency fee arrangements often mean that plaintiffs' attorneys absorb expenses from unsuccessful cases, relatively few members of the bar are willing to regularly undertake litigation of constitutional

torts.  Saleem Decl. ¶ 21.  All of these factors mean that "induc[ing] a capable attorney to undertake the representation of a meritorious civil rights case," *Perdue*, 130 S. Ct. at 1672, requires that the courts grant full "lodestar" recoveries in successful cases, including reference to the "prevailing market rates in the relevant community…governed by the same standards which prevail in other types of equally complex Federal litigation, such as antitrust cases." *Blum*, 465 U.S. at 893.

A "reasonable hourly rate" has also been described as "one that grants the successful civil rights plaintiff a fully compensatory fee, comparable to what is traditional with attorneys compensated by a fee-paying client."  *Foster v. Kings Park Central Sch. Dist.*, 174 F.R.D. 19, 26-27 (E.D.N.Y. 1997) (quoting *Missouri v. Jenkins*, 491 U.S. 274, 286 (1989)).  As former Chief Justice Rehnquist recognized, the reasonableness of a fee should be determined "in light of both the traditional billing practices in the profession, and the fundamental principle that the award of a 'reasonable' attorney's fee under § 1988 means a fee that would have been deemed reasonable if billed to affluent plaintiffs by their own attorneys." *City of Riverside*, 477 U.S. at 591 (Rehnquist, Ch. J., dissenting).

In determining a reasonable fee, a court must also bear in mind the well-settled principle that an appropriate award under § 1988 need not be proportional to the damages recovered in the underlying litigation.

> [Section] 1988 was enacted in part to secure legal representation for plaintiffs whose constitutional injury was too small, in terms of expected monetary recovery, to create an incentive for attorneys to take the case under conventional fee arrangements.  Reasoning that a rule calling for proportionality between the fee and the monetary amount involved in the litigation would effectively prevent plaintiffs from obtaining counsel in cases where deprivation of a constitutional right caused injury of a low monetary value, we have repeatedly rejected the notion that a fee may be reduced merely because the fee would be disproportionate to the financial interest at stake in the litigation…If the district court reduced the fee in the

8

> belief that the claimed hours were simply disproportionate in a case involving a $2500 injury, without regard to the reasonableness of the attorney's expenditure of time in responding to the particular circumstances, this was error.

*Kassim v. City of Schenectady*, 415 F.3d 246, 252 (2d Cir. 2005); *see also Millea v. Metro-North Railroad Co.*, __ F.3d __, 2011 WL 3437513 (2d Cir. 2011) ("Especially for claims where the financial recovery is likely to be small, calculating attorneys' fees as a proportion of damages runs directly contrary to the purpose of fee-shifting statutes. . . [t]he whole purpose of fee-shifting statutes is to generate attorneys' fees that are *disproportionate* to the plaintiff's recovery.") (emphasis in original); *City of Riverside*, 477 U.S. at 575 ("Because damages awards do not reflect fully the public benefit advanced by civil rights litigation, Congress did not intend for fees in civil rights cases, unlike most private law cases, to depend on obtaining substantial monetary relief."); *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 424 (2d Cir. 1999) (rejecting a "billing judgment" rule that would limit the awardable fee to one rationally related to the recovery that could be expected *ex ante*).   Thus, the fact that a plaintiff's requested fee exceeds the damages award in the underlying matter should have limited significance. *See*, *e.g., Barbour v. City of White Plains*, __ F.Supp.2d ___, 2011 WL 2022884 (S.D.N.Y. 2011) (awarding $290,997.94 in attorneys' fees and costs upon a judgment of $10,000 for each of three plaintiffs).

In the recent *Millea* case, the Second Circuit vacated as abuse of discretion a district court's award of reduced attorneys' fees based on a $612.50 verdict where the trial court did not engage in the lodestar analysis, and remanded the attorneys' fee award for recalculation "in conformity with the lodestar method." *Millea*, 2011 WL 3437513 at *10. The Second Circuit also recognized that prior cases in this circuit allowing for a departure from the lodestar where the financial recovery was limited were abrogated by *Perdue*:

> To the extent we have held otherwise in the past, *see Carroll v. Blinken*, 105 F.3d 79, 81 (2d Cir. 1997) ("[W]here the damage award is nominal or

9

> modest, the injunctive relief has no systemic effect of importance, and no substantial public interest is served, a substantial fee award cannot be justified."), such holdings were (at least) impaired by the declaration in *Perdue* that the lodestar is the "guiding light of our fee-shifting jurisprudence," that it is "presumptively reasonable," that it includes "most, if not all, of the relevant factors" in determining a reasonable fee award, and that it should only be deviated from in "rare" and "exceptional" circumstances. *Perdue*, 130 S.Ct. at 1672–73 (internal quotation marks omitted).

*Id.* at *9, n.4. Indeed, the *Millea* court went on to explain that, following *Perdue*, the financial recovery of a prevailing party is ordinarily irrelevant to the determination of a reasonable fee:

> If an expense of time is required to obtain an award that is not available by voluntary compliance or offer of settlement, the expense advances the purposes of the statute. Absent a purely technical victory in an otherwise frivolous suit, litigation outcomes are only relevant to fee award calculations when they are a direct result of the quality of the attorney's performance. And the quality of an attorney's performance generally should not be used to adjust the lodestar because considerations concerning the quality of a prevailing party's counsel's representation normally are reflected in the reasonable hourly rate used to calculate the lodestar initially. Even in those "rare" and "exceptional" instances where an adjustment is warranted by the characteristics of the attorney, the trial judge should adjust the attorney's hourly rate in accordance with specific proof linking the attorney's ability to a prevailing market rate. In other words, such adjustments should be made when calculating the original lodestar figure. The court must also link such adjustments to specific actions of the attorney that indicate a level of performance not accounted for in the prevailing market rate. The district court erred by adjusting the attorneys' fee award based on the outcome of the litigation without tying that outcome to the quality of *Millea*'s attorneys and without making the adjustment within the lodestar calculation.

*Id.* at *9 (citations and quotations omitted).

The relevant community for a fee determination is the judicial district in which the trial court sits – here, the Eastern District of New York. *See Arbor Hill*, 522 F.3d 182 (2d Cir. 2007); *In re Agent Orange Prods. Liability Litig.*, 818 F.2d 226, 232 (2d Cir. 1987).

C.    **The Hourly Rates Requested Are Reasonable**

When determining the prevailing market rate, "current rates, rather than historical rates, should be applied in order to compensate for the delay in payment." *A.R. v. N.Y. City Dep't of Educ.*, 407 F.3d 65, 83 (2d Cir. 2005) (quoting *LeBlanc-Sternberg*, 143 F.3d at 764); *Reiter v. MTA N.Y. City Transit Auth.*, 457 F.3d 224, 232 (2d Cir. 2006).   The delay in payment in this case is not inconsequential, since the litigation has lasted almost a year.

1.    Mr. Saleem's Hourly Rate

Mr. Saleem's requested hourly rate is $425.   Mr. Saleem has an extensive background in litigating complex civil rights and constitutional law cases.   Saleem Decl. ¶¶ 8-16, 35.   As his declaration makes clear, he has been practicing over 10 years, has particular expertise in false arrest and malicious prosecution cases and is a renowned trial advocate.   He graduated from the University of Pennsylvania and received his law degree from Brooklyn Law School.   At Brooklyn Law, he was an Edward V. Sparer Public Interest Law Fellow, an Academic Achievement scholar and a participant in the Federal Litigation and Social Justice Project Clinic. Saleem Decl. ¶¶ 3-4.

He was appointed as an Assistant Corporation Counsel of the City of New York upon graduation from law school in 2001 and began working in the Brooklyn Borough Office of the Tort Division defending the municipality and its employees in state court negligence and civil rights actions.   In 2005, after only four years at the Law Department, he was promoted to Senior Counsel and designated as a trial attorney.   During his tenure in the Brooklyn Tort office, he tried thirteen cases to verdict, had several cases settled during trial and picked over thirty juries. He engaged in extensive pre- and post-trial motion practice, conducted over 200 depositions and drafted several motions that were decided in the City's favor on appeal to the Second Department. *See Dick v. The Gap, Inc.*, 16 A.D.3d 615 (2nd Dept. 2005); *Santoro v. City of New*

*York*, 795 N.Y.S.2d 60 (2nd Dept. 2005); *Palopoli v. City of New York*, 305 A.D.2d 388 (2nd Dept. 2003).  He served as trial counsel in *Shaperonovitch v. City of New York*, which resulted in a landmark 2008 New York Court of Appeals decision fundamentally changing the notice requirements in personal injury cases in New York State.  *See D'Onofrio v. City of New York*, 11 N.Y.3d 581 (2008).  Saleem Decl. ¶¶ 4-6, Exhibit H.

In 2006, Mr. Saleem transferred to the Special Federal Litigation Division.  The Law Department's website describes the division's work:

> Established in September of 1998, Special Federal Litigation was created as a specialized division to defend the City and its officials in civil rights cases brought in federal court in which police, District Attorney, or correction officer misconduct is claimed…Division attorneys maintain active caseloads and are responsible for all aspects of litigation, from initial interviews of named defendants to investigation, depositions, paper discovery, negotiation of settlements, motions, court conferences, arguments, and trials by jury. Due to the high-profile nature of their work, many Division attorneys litigate actions that garner press coverage or are the subject of public debate.

http://www.nyc.gov/html/law/html/about/divisions_federal.shtml (accessed October 21, 2011). Upon arrival at Special Federal Litigation, Mr. Saleem was assigned to the role of supervising attorney on the class action entitled *McBean v. City of New York*, 02-CV-5426 (JGK) (THK) and the related action brought by intervenor-plaintiffs, *Ramos v. City of New York*.  The *McBean* litigation involved constitutional challenges to the New York City Department of Correction's ("DOC") new admission strip-search policies at six of the jails on Rikers Island.  The case garnered extensive media attention and ultimately settled in 2010 for $33 million, including $4 million in attorneys' fees.  Saleem Decl. ¶ 8.

Mr. Saleem's involvement in *McBean* included conducting the depositions of named intervenor-plaintiffs, coordinating, attending and representing Correction officials at inspections of the jail facilities, preparing individually-named defendants and witnesses for depositions,

including the former president and medical director of Prison Health Services, various correction officers, a correction captain and an Assistant Chief of Department who testified as a 30(b)(6) witness.   Mr. Saleem attended high-level policy meetings with Martin Horn, the then Commissioner of DOC, DOC's Chief of Department, Chief of Staff, Deputy Commissioners and other high-ranking officials and wardens.   He was to give the opening statement and examine several witnesses at an injunction hearing in October 2007 on DOC search procedures before the Honorable Gerard E. Lynch.   Although the hearing never occurred, Mr. Saleem assisted with pre-trial submissions, prepared witnesses for the injunction hearing and deposed trial witnesses. Saleem Decl. ¶¶  9-10.

Aside from work on *McBean*, while serving in Special Federal Litigation, he handled approximately 84 § 1983 cases in the Southern and Eastern Districts of New York involving claims of false arrest, malicious prosecution and/or excessive force by police officers.   He litigated and tried cases against some of the most well known plaintiff's civil rights attorneys. He was lead counsel in the 2007 trial of *Green v. City of New York* before the Honorable Richard M. Berman in the Southern District of New York, which involved the involuntary hospitalization of a ventilator-dependent individual with Lou Gehrig's Disease.   After a jury awarded the plaintiff $400,000, Judge Berman granted defendants' Rule 50 motion.   Following appeal to the Second Circuit, the Supreme Court denied *certiori*. *Green v. City of New York,* 01-CV-1996 (RMB), 2007 WL 2584752 at *11 (S.D.N.Y. Sept. 6, 2007), remanded, 359 F. App'x 197 (2d Cir. 2009), *cert. denied*, 131 S. Ct. 125 (2010).  Saleem Decl. ¶¶ 11-12.

In 2008, Mr. Saleem tried *Estes v. City of New York*, a § 1983 false arrest and excessive force case, before the Honorable Sandra L. Townes in the Eastern District of New York, obtaining a defense verdict against Fred Lichtmacher, a well respected civil rights plaintiff's

attorney.  *See* 01-CV-5158 (SLT).  In 2009, he tried the § 1983 false arrest and excessive force case *Stephen v. Hanley* before the Honorable Kiyo A. Matsumoto in the Eastern District of New York.  The plaintiffs in *Stephen* were represented *pro bono* by a team of attorneys from Mayer Brown.  One of the plaintiffs obtained nominal damages on a single claim against one of the defendants.  The verdict was otherwise in favor of the nine defendants.  On appeal, the Second Circuit affirmed and the Supreme Court denied *certiori*.  *Stephen v. Hanley*, 376 Fed.Appx. 158 (2d Cir. 2010), *cert. denied*, 131 S. Ct. 795 (2010).  In 2009, Mr. Saleem tried *Lopez v. Joshua* to a defense verdict before the late Honorable David G. Trager in the Eastern District of New York.[2]  *Lopez* also involved § 1983 claims of excessive force and false arrest.  *See* 08-CV-1871 (DGT) (VVP).  In 2010, he commenced the trial of *Zhao v. City of New York* before the Honorable Lewis A. Kaplan in the Southern District of New York, although the case settled before jury deliberations for $600,000.  *See* 07-CV-3636 (LAK) (MHD).  Saleem Decl. ¶¶ 13-15.

As a result of Mr. Saleem's experience and reputation, he was invited in 2010 to become an instructor at the National Institute of Trial Advocacy ("NITA"), the nation's leading provider of legal advocacy skills training.  Among NITA's 2011 faculty is the Honorable Deborah A. Batts of the Southern District of New York.  Mr. Saleem conducted several days of intensive NITA training at Fordham Law School attended by the entering classes of several litigating divisions of the Law Department.  Mr. Saleem also lectured at a Continuing Legal Education program, "Cross-Examining Medical Experts" presented at the Law Department in 2010.  Mr. Saleem's exemplary cross-examination of the plaintiff's expert in *Stephen* was selected for inclusion in the course materials.  Mr. Saleem is a member of the New York and New Jersey state bars; he is also a member of the bar of the United States District Courts for the Southern and Eastern Districts of New York and the District of New Jersey.  He is a member of the New

---

[2] As in this case, Mr. Harvis was Mr. Saleem's co-counsel in *Lopez*.  Saleem Decl. ¶ 15, n.1; Harvis Decl. ¶ 11.

York City Bar Association, serving on the Legal Services for Persons of Moderate Means Committee, and the Federal Bar Council.  Saleem Decl. ¶¶ 16-17.

In September 2010, Mr. Saleem entered private practice and founded Harvis & Saleem with Mr. Harvis.  Since its founding, the firm has filed approximately 50 § 1983 civil rights cases in the Southern and Eastern Districts of New York, the vast majority of which involve claims of false arrest, excessive force and/or malicious prosecution.  Saleem Decl. ¶ 18.

The people Mr. Saleem represents in civil rights cases can only afford to retain an attorney on a contingency basis, and all of his cases are handled that way.  He does not receive an initial retainer from any of his clients, nor do any of them make even a token contribution to litigation expenses.  He is compensated based upon a percentage of any judgment or settlement, or through § 1988 fee awards and settlements.  He bears all of the costs of litigation while the case is pending, and has always released his client from any obligation to pay for expenses which have been advanced if there is no recovery.  For example, in 2010, he and Mr. Harvis litigated a case through motion practice and trial and lost, absorbing $10,000 in expenses.  *Majors v. City of New York*, 10-CV-4730 (BMC).  Saleem Decl. ¶¶ 19-20.

Civil rights cases are extremely risky and involve arcane issues of law.  The New York City Law Department describes civil rights law as "the Constitution of the United States and the vastly complex area of Federal law specific to 42 U.S.C. § 1983…, a complex, ever-changing area of law."  http://www.nyc.gov/html/law/html/about/divisions_federal.shtml (accessed October 21, 2011).  It is well known that only a small segment of the bar is willing to take such cases as the bulk of a law practice.  Because the chances of losing police misconduct cases is high, Mr. Saleem and other civil rights lawyers in New York depend on the availability of a full "lodestar" recovery if they do prevail.  Saleem Decl. ¶¶ 21-22.

While this is Mr. Saleem's first application for a judicial award of attorney's fees, Harvis & Saleem has negotiated fees with the Law Department in the context of six accepted Rule 68 Offers of Judgment, and the City has never questioned Mr. Saleem's rate.  Further, at the time defendants informed plaintiff that they would not be making an offer to settle the fees in this case, defense counsel acknowledged that the rates sought and hours claimed were reasonable. Saleem Decl. ¶ 35.

Mr. Saleem also has special expertise which was brought to bear in this case, because of his significant experience in false arrest and excessive force cases.  To the extent that "a reasonable, paying client wish[ing] to spend the minimum necessary to litigate the case effectively," *Arbor Hill*, 522 F.3d at 190, would seek competent counsel in the marketplace, there would be especially good reason for them to seek out Mr. Saleem, given his experience and specialization in this type of case.

Exhibit F to the Saleem Declaration is the December 6, 2010, National Law Journal's most recent annual survey of law firm hourly billing rates.[3]  The average partner rate among New York firms reporting that figure is $633 per hour.  Top partner rates among New York firms reported in the survey range between $730 and $995 per hour.[4]

Exhibit G to the Saleem Declaration is the "Laffey Matrix" (www.laffeymatrix.com), which is an accepted tool for establishing hourly rates for attorneys in the Washington, D.C.-Baltimore area.  *Laffey v. Northwest Airlines*, 572 F. Supp. 354 (D.D.C. 1983), *aff'd*, 746 F.2d 4 (D.C. Cir 1984; *Interfaith Community Org. v. Honeywell*, 426 F.3d 694, 708-709 (3d Cir. 2005).

---

[3] The survey does not cover all law firms, and it is well known among attorneys at firms in New York that many of the firms with the highest rates do not respond to the survey.  Saleem Decl. ¶ 38.

[4] The survey is often used by federal courts to determine appropriate hourly rates.  *See, e.g.*, *Integrated Marketing v. JEC Nutrition*, 2007 WL 840304 at *2 (S.D.N.Y. Mar. 19, 2007); *Banco Centrale v. Paraguay Humanitarian Found.*, 2007 WL 747814 at *2 (S.D.N.Y. Mar. 12, 2007); *In re Merrill Lynch v. Research Securities Litig.*, 2007 WL 313474 (S.D.N.Y. Feb. 1, 2007).

By using this method of calculating attorneys' hourly rates, Mr. Saleem would receive $540 per hour.

Courts in this district have also awarded similar rates for civil rights counsel of the ability, expertise and experience of plaintiff's counsel here.  In August 2011, Judge Cogan awarded attorney's fees to plaintiff's counsel Michael Lumer at the hourly rate of $425, noting that "[c]ourts in this district have approved hourly rates exceeding $400 for high-caliber civil rights attorneys."  *Blount v. City of New York*, 11-CV-124 (BMC), Docket No. 20, p. 1 (citing *Thorsen v. County of Nassau*, 03-CV-1022 (ARL), 2011 WL 1004862 at *5 (E.D.N.Y. Mar. 17, 2011) (collecting cases)); Harvis Decl., Exhibit B; *see also Rodriguez v. Pressler & Pressler, LLP*, 06-CV-5103, 2009 WL 689056 (E.D.N.Y. Mar. 16, 2009) (awarding $450 per hour to civil rights attorney).

Exhibits C, D and E to the Saleem Declaration are the declarations of Joel Berger, Esq., Fred Lichtmacher, Esq. and Jon Norinsberg, Esq., all of whom are notable civil rights litigators with many years of experience and outstanding reputations, in which they attest that $425 per hour is well within the bounds of hourly rates charged by lawyers of Mr. Saleem's experience and ability.

      2.   <u>Mr. Harvis's Hourly Rate</u>

At the close of discovery, when defendants' counsel declared that there would be no settlement of this case and that it would proceed to trial, Mr. Saleem's partner, Gabriel P. Harvis, joined him to prepare the case for trial.  In light of defendants' declared intention to litigate the case through trial, there was good reason for the firm to add a second attorney to the case, especially given the number of witnesses which were expected to testify at trial (a minimum of six – the plaintiff, the prosecution witness and the four defendants).  Furthermore, the Law

staffed the matter with two attorneys from the outset and a third supervising attorney attended the final pre-trial conference.  Saleem Decl. ¶ 27.

Mr. Harvis's requested rate of $375 is the rate that he charges defendants when a civil rights client accepts a Rule 68 Offer of Judgment.  Harvis Decl. ¶ 15.  Mr. Harvis has been practicing law for five years, all of which he has specialized in the area of civil rights litigation in general, and police misconduct litigation in particular; he has appeared as attorney of record in 145 federal § 1983 cases in the Eastern and Southern Districts of New York.  Harvis Decl. ¶¶ 5-6.  As a testament to his reputation as a skilled civil rights litigator, more experienced practitioners, including Julia Kuan, Esq., routinely refer civil rights cases to him.  Harvis Decl. ¶ 13.

Mr. Harvis is a product of the rigorous training program at the Special Federal Litigation Division of the Law Department, where he was appointed Assistant Corporation Counsel following graduation from Brooklyn Law School in 2006.  Special Federal Litigation has a well-earned reputation in the Southern and Eastern Districts of New York as maintaining the highest standards of public sector practice and is responsible for defending all § 1983 civil rights cases brought against the City and its employees in federal court.  During his first two years, while undergoing training and handling an individual caseload, Mr. Harvis was selected for assignment to the large *McBean* class action.  On *McBean*, he attended high-level meetings with the DOC Commissioner and prepared witnesses for depositions.  He assisted in drafting defendants' opposition to plaintiffs' Rule 56 motion and *in limine* motions filed in advance of the October 2007 injunction hearing.  Harvis Decl. ¶¶ 7-10.

During his tenure at the Law Department, Mr. Harvis defended New York City police officers in 101 false arrest, malicious prosecution and/or excessive force cases in the Southern

and Eastern Districts, conducting four jury trials and an evidentiary inquest.  *See Robertson v. Sullivan*, 07-CV-1416 (JG) (LB) (false arrest, malicious prosecution and excessive force); *Garcia v. City of New York*, 07-CV-4331 (SJF) (RER) (false arrest and excessive force); *Lopez v. Joshua*, 08-CV-1871 (DGT) (VVP) (same); *Dixon v. Ragland*, 03-CV-826 (LTS) (KNF) (excessive force).   Mr. Harvis also gained considerable experience in all phases of motion practice.  *See*, *e.g.*, *Wilson v. McMullen*, 07-CV-948 (SLT) (LB), 2010 WL 1268055 (E.D.N.Y. Mar. 30, 2010) (granting summary judgment in § 1983 false arrest case); *Balkanli v. City of New York*, 07-CV-2204 (NG), 2009 WL 1346736 (E.D.N.Y. May 14, 2009) (same); *Sanders v. N.Y.C. Dep't of Corrections*, 07-CV-3390 (SHS), 2009 WL 222161 (S.D.N.Y. Jan. 30, 2009), *aff'd*, 376 Fed.Appx. 151 (2d Cir. 2010) (granting summary judgment in § 1983 failure to protect case); *Grant v. City of New York*, 07-CV-869 (ENV) (LB), 2008 WL 4646158 (E.D.N.Y. Oct. 20, 2008) (granting dismissal of § 1983 excessive force claim pursuant to Fed. R. Civ. P. 37(b)(2)(A)(v)).   Mr. Harvis's talents were recognized by the Law Department when he was assigned in 2010 to defend the high-profile matter *Carmichael v. City of New York*, 06-CV-1913 (NG) (VVP).   He has tried two additional federal police misconduct cases since he and Mr. Saleem founded Harvis & Saleem in 2010.   Harvis Decl. ¶¶  11-12.

Mr. Harvis's requested hourly rate of $375 is in line with a partner in a small law firm with five years of specialized experience.  Harvis Decl. ¶ 5.  *See Artemide Inc. v. Spero Elec. Corp.*, 09-CV-1110 (DRH) (ARL), 2010 WL 5452075 (E.D.N.Y. Nov. 23, 2010) ("Current prevailing rates for partners in the Eastern District range from $350 to $450." (citations omitted)); *Thorsen*, 2011 WL 1004862 at *5. The National Law Journal survey demonstrates that $375 per hour is well within the range of "prevailing market rates in the relevant community," *Perdue*, 130 S. Ct at 1672 (quoting *Blum*, 465 U.S. at 895); Saleem Decl., Exhibit F.

3.     Hourly Rates for Paralegal Tasks and Travel

Harvis & Saleem does not employ any paralegals or legal assistants. In this case the attorneys performed tasks such as filing and serving documents. Plaintiff seeks compensation for such time at the rate of $80 per hour, which is a recognized rate in this district. *Szczepanek v. Dabek,* 10-CV-2459 (SJF) (ARL), 2011 WL 846193, at *8 (E.D.N.Y. Mar. 7, 2011); *Cf. Builders Bank v. Rockaway Equities, LLC,* 08-CV-3575 (MDG), 2011 WL 4458851 at *9 (paralegal tasks performed by attorneys should be billed at lower rate). Saleem Decl. ¶ 41. Travel time is typically awarded at fifty percent of the attorney's hourly rate. *Cruz v. Local Union No. 3 of the IBEW,* 34 F.3d 1148, 1161 (2d Cir. 1994). Plaintiff requests that the Court award fees for attorney travel time at fifty percent of each attorney's hourly rate. Saleem Decl. ¶ 41.

**D.     The Time Expended By Plaintiff's Counsel Was Reasonable**

The Supreme Court has noted that a reasonable hourly fee will normally encompass all hours reasonably expended on the litigation. *Hensley,* 461 U.S. at 435. A party seeking fees bears the burden of supporting its claim of hours expended by accurate, detailed and contemporaneous records. *See New York State Ass'n for Retarded Children v. Carey*, 711 F.2d 1136, 1147-48 (2d Cir. 1983). Exhibit B to the Saleem Declaration contains accurate, detailed and contemporaneous time records maintained by plaintiff's counsels' firm. The records are sufficiently specific and detailed so that the Court can determine the nature of the work performed in the successful prosecution of this case. Mr. Saleem spent a total of 172.4 hours on this litigation (including 10 hours for travel and 5.1 hours performing paralegal tasks). At his hourly rate of $425 for legal work, $212.50 for travel and $80 for paralegal tasks, plaintiff is requesting $69,385.50 for his work. Mr. Harvis spent 111.5 hours on this case (including 7 hours for travel and 1.2 hours performing paralegal tasks). At his hourly rate of $375 for legal

20

work, $187.50 for travel and $80 for paralegal tasks, plaintiff requests compensation of $40,146.00. Saleem Decl., Exhibit B.

As set forth in the Saleem Declaration, defendants declined to respond to plaintiff's settlement demand in April 2011 and re-affirmed their position in August 2011. Obviously, had defendants proceeded with settlement negotiations (or made a Rule 68 Offer), many of the hours which were expended on this litigation might have been unnecessary. Instead, the case was tried to a plaintiff's verdict. Saleem Decl. ¶ 30. Therefore, defendants are entirely responsible for the number of hours expended on this case.

The attorneys' fees sought herein include compensation for the time spent preparing the instant fee application. It is well-settled that attorneys should be compensated for "'time reasonably spent by plaintiff's attorneys in establishing their fee' pursuant to fee-shifting statutes, such as § 1988." *Davis v. City of New Rochelle*, 156 F.R.D. 549, 560 (S.D.N.Y. 1994) (quoting *Gagne v. Maher*, 594 F.2d 336, 344 (2d Cir. 1979), *aff'd*, 448 U.S. 122 (1980)); *Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1183-84 (2d Cir. 1996); *New York State Ass'n for Retarded Children v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983). The time submitted for preparing this fee application is 14.1 hours by Mr. Saleem, and 23 hours by Mr. Harvis, which is 11.6% of the total time claimed for work on this case. "The Second Circuit has upheld fee awards where the time spent on the fee application was up to 24% of the total time claimed...[and] other courts within this Circuit have awarded fee application awards in the range of 8 to 24 percent of the total time claimed." *Natural Resources Defense Counsel, Inc. v Fox*, 129 F. Supp. 2d 666, 675 (S.D.N.Y 2001) (quoting *Davis*, 156 F.R.D. 549, 561 (S.D.N.Y. 1994)); *see Trichilo v. Secretary*

*of Health & Human Servs.*, 823 F.2d 702 (2d Cir. 1987), *reaff'd and extended*, 832 F.2d 743 (2d Cir. 1987) (approved fee application constituting 24% of total time claimed).[5]

E.   **Plaintiff Is Entitled to Recover Reasonable Out-of-Pocket Expenses**

Pursuant to 42 U.S.C. § 1988 and Federal Rule of Civil Procedure 54(d), plaintiff seeks an award of reasonable out-of-pocket expenses in this case.  As a prevailing party, plaintiff is entitled to recover such expenses incurred during the litigation that would normally be charged to a fee-paying client.  The non-taxable expenses of the litigation are included in the invoice attached to the Saleem Declaration as Exhibit B, and documentation supporting the expenses is attached to the invoice.[6]  These expenses are of the type routinely billed by attorneys to fee-paying clients and were actual and necessary costs incurred to prosecute this case.  *See*, *e.g.*, *LeBlanc-Sternberg*, 143 F.3d at 763; *U.S. Football League v. National Football League*, 887 F.2d 408, 416 (2d Cir. 1989).  The total non-taxable out-of-pocket expenses incurred by plaintiff is $1,085.95.

---

[5] If necessary, plaintiff will supplement his request for fees and costs to reflect all work done on this matter from this point forward – such as a Reply to the defendants' Opposition or work to be performed in response to the Court's actions with respect to this fee application, including any appeal the parties may take.  Saleem Decl. ¶ 32 n.2; Harvis Decl. ¶ 21.

[6] The taxable costs were settled by Stipulation dated October 20, 2011.  *See* Docket Entry No. 44.

## CONCLUSION

**WHEREFORE**, plaintiff respectfully requests that this Honorable Court award a total of $125,234.95 as attorneys' fees and costs to the plaintiff as a prevailing party in this litigation, in the following amounts:

a. Attorney's Fees to Afsaan Saleem at the rate of $425 per hour for 171.4 hours spent on this litigation through the date of this application for a total of $72,845.00;

b. Attorney's Fees to Gabriel P. Harvis at the rate of $375 per hour for 126.3 hours spent on this litigation, for a total of $47,362.50;

c. Attorneys' fees for 10 hours of attorney travel time by Afsaan Saleem and 7 hours of travel time by Gabriel P. Harvis during the litigation at half their hourly rate, for a total of $3,437.50;

d. Attorneys' fees for 6.3 hours of paralegal tasks at the rate of $80 per hour, for a total of $504.00;

e. Reasonable costs and expenses in the amount of $1,085.95; and

f. Such other costs and expenses as may be incurred hereafter.

Dated:   New York, New York
       October 21, 2011

Respectfully submitted,

_____
Afsaan Saleem, Esq.
Gabriel P. Harvis, Esq.
Harvis & Saleem LLP
305 Broadway, 14th Floor
New York, NY 10007
(212) 323-6880
*Attorneys for Plaintiff*