10 CV 5879 (TLM) (MDG)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

MALIK FRYAR,

Plaintiff,

-against-

CITY OF NEW YORK; Police Officer ROBERT ZHEN,
Police Officer MATTHEW KOKORUDA, Police Officer
TYLER KALMAN, Police Officer PETER KESSLER,
and JOHN and JANE DOE 5 through 10, individually
and in their official capacities, (the names John and Jane
Doe being fictitious, as the true names are presently
unknown),

Defendants.

## DEFENDANTS' OPPOSITION IN RESPONSE TO PLAINTIFF'S MOTIONS FOR ATTORNEYS FEES AND COSTS

**MICHAEL A. CARDOZO**
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*New York, N.Y. 10007*

Of Counsel:
*Brian Francolla*
*Matthew Modafferi*
*Tel: (212) 788-0988/1652*

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................. ii

PRELIMINARY STATEMENT ............................................................................1

PROCEDURAL HISTORY ...................................................................................1

    POINT I

        THE    REQUESTED    HOURLY    RATES    ARE
        UNREASONABLE. ....................................................................5

            Mr. Saleem's Experience: ...................................................7

            Mr. Harvis' Experience: ....................................................9

            Mr Saleem's Proposed Rate: ..............................................11

            Mr Harvis' Proposed Rate: ................................................17

    POINT II

        THE    AMOUNT    OF    HOURS    EXPENDED    BY
        PLAINTIFF'S COUNSEL MUST BE REDUCED. ...........................26

    POINT III

        THE    AMOUNT    OF    HOURS    EXPENDED    BY
        PLAINTIFF'S  COUNSEL  MUST  BE  REDUCED  IN
        LIGHT  OF  THE  DEGREE  OF  SUCCESS  PLAINTIFF
        OBTAINED...............................................................26

    POINT IV

        FEES   IN   CONNECTION   WITH   THE   INSTANT
        APPLICATION SHOULD NOT BE AWARDED. ............................33

CONCLUSION...............................................................................34

# TABLE OF AUTHORITIES

<u>Cases</u>                                                                                     <u>Pages</u>

Adams v. Rivera,
   13 F. Supp. 2d 550 (S.D.N.Y. 1998) ...................................................................31, 32, 33, 34

Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany and Albany
   County Bd. of Elections,
   522 F.3d 182 (2d Cir. 2008) ...........................................................................................5, 6

Artemide Inc. v. Spero Elec. Corp., CV,
   09-1110 (DRH) (ARL), 2010 U.S. Dist. LEXIS 136870 (E.D.N.Y. Nov. 23, 2010) ........18, 19

Baird v. Boies, Schiller & Flexner, LLP,
   219 F. Supp. 2d 510, 524-25 (S.D.N.Y. 2002) .........................................................35

Barfield v. New York City Health and Hosps. Corp.,
   537 F.3d 132, 151 (2d Cir. 2008) ......................................................................5, 28

Betancourt v. Giuliani,
   325 F. Supp. 2d 330, 333-34 (S.D.N.Y. 2004) .........................................................35

Blount v. City of New York,
   11-CV-124 (BMC).....................................................................................................11, 18

Blue v. Finest Guard Services, Inc.,
   No. 09-CV-133 (ARR), 2010 U.S. Dist. LEXIS 73223
   (E.D.N.Y. Jun. 24, 2010)...........................................................................................15

Blum v. Stenson,
   465 U.S. 886, 896 N.11 (1984).....................................................................................6

Brady v. Wal-Mart Stores, Inc.,
   03-CV-3843 (JO), 2010 U.S. Dist. LEXIS 115380 (E.D.N.Y. Oct. 29, 2010) ........................20

Builders Bank v. Rockaway Equities, LLC,
   08-CV-3575 (MDG), 2011 U.S. Dist. LEXIS 107409 (E.D.N.Y. Sept. 23, 2011) ............24, 25

Cabrera,
   24 F.3d at 393 ...........................................................................................................31

Capone v. Patchogue-Medford Union Free Sch. Dist.,
   04-CV-2947 (JS) (MLO), 2011 U.S. Dist. LEXIS 18194 (E.D.N.Y. Feb. 23, 2011) ..............20

Carmichael v. City of New York,
   06-CV-1913 (NG) (VVP) ........................................................................................11

**Cases**                                                                                                           **Pages**

Carrero v. New York City Hous. Auth.,
  685 F. Supp. 904 (S.D.N.Y. 1988),
  aff'd, 890 F.2d 569 (2d Cir. 1989)) ................................................................................... 24-25

Chambless v. Masters, Mates & Pilots Pension Plan,
  885 F.2d 1053 (2d Cir. N.Y. 1989).......................................................................................15

Coated Fabrics Co. v. Mirle Corp.,
  No. 06-CV-5415, 2008 WL 163598 (E.D.N.Y. Jan. 16, 2008)...............................................20

D'Onofrio v. City of New York,
  2008 NY Slip Op 9860 (N.Y. 2008) .........................................................................................9

Davis v. City of New York,
  10 Civ. 699 (SAS), 2011 U.S. Dist. LEXIS 120165 (S.D.N.Y. Oct. 17, 2011) ......................29

Dick v. Gap, Inc.,
  16 A.D.3d 615 (N.Y. App. Div. 2d Dep't 2005) ......................................................................9

Difilippo v. Morizio,
  759 F.2d 231 (2d Cir. 1985) ..................................................................................................21

Duverger v. C & C Duplicators, Inc.,
  No. 08-CV-0721 (DRH) (ARL), 2009 U.S. Dist. LEXIS 53859
  (E.D.N.Y. June 25, 2009) ......................................................................................................16

Farrar v. Hobby,
  506 U.S. 103 (1992)...........................................................................................28, 30, 31, 32

Gagne v. Maher,
  594 F.3d 336 (2d Cir. 1979) ...........................................................................................34, 35

Gierlinger v. Gleason,
  160 F.3d 858 (2d Cir. 1998) ...................................................................................................6

Grant v. Martinez,
  973 F.2d 96 (2d Cir. 1992) ...................................................................................................23

Green, et al. v. City of New York, et al.,
  1:01-CV-01996 (RMB) (GWG) .............................................................................................8

Gutman v. Klein,
  No. 03-CV-1570 (BMC), 2009 U.S. Dist. LEXIS 123057
  (E.D.N.Y. Oct. 13, 2009).................................................................................................. 15-16

**Cases** **Pages**

Hector Garcia v. City of New York,
   07-CV-4331 (SJF) (RER) ...................................................................................10

Hensley v. Eckerhart,
   461 U.S. 424, 434 (U.S. 1983) ...............................................................21, 28, 30

Hewitt v. Helms,
   482 U.S. 755 (U.S. 1987) ....................................................................................33

Hine v. Mineta,
253 F. Supp. 2d 464, 467 (E.D.N.Y. 2003) .............................................................35

Imbeault v. Rick's Cabaret Int'l Inc.,
   No. 08 Civ. 5458, 2009 U.S. Dist. LEXIS 71562 (S.D.N.Y. Aug. 13, 2009) ...........6

Joel Ramos, et al. v. City of New York .....................................................................8

Kadian Macbean, et al. v. City of New York,
   02-CV-5426 (JGK) (THK) ....................................................................................8

Kassim v. City of Schenectady,
   415 F.3d 246 (2d Cir. 2005) ..........................................................................28, 29

Kirsch v. Fleet Street, Ltd.,
   148 F.3d 149 (2d Cir. 1998) ..........................................................................21, 24

La Barbera v. Les Sub-Surface Plumbing, Inc.,
   No. 06-CV-3343 06-CV-3343 (NG) (KAM), 2007 U.S. Dist. LEXIS 98804
   (E.D.N.Y. Dec. 11, 2006) ....................................................................................20

Leblanc-Sternberg v. Fletcher,
   143 F.3d 748 (2d Cir. 1998) ................................................................................31

Lochren v. County of Suffolk,
   CV 01-3925 (ARL), 2010 U.S. Dist. LEXIS 28288 (E.D.N.Y. Mar. 23, 2010) ......19

Luca v. County of Nassau,
   No. 04-CV-4898, 698 F. Supp. 2d 296 (E.D.N.Y. Jan. 25, 2010) ..........................19

Lunday v. City of Albany,
   42 F.3d 131 (2d Cir. 1994) ..........................................................................21, 32

Marshall v. New York Div. of State Police,
31 F. Supp. 2d 100, 107-8 (N.D.N.Y 1998) .............................................................35

**Cases**                                                                                                                **Pages**

Melnick v. Press,
   No. 06-CV-6686 (JFB) (ARL),
   2009 U.S. Dist. LEXIS 77609 (E.D.N.Y. Aug. 28, 2009).......................................................16

Millea v. Metro-North R.R. Co.,
   Nos., 10-409-Cv, 10-564-Cv,
   2011 U.S. App. LEXIS 16354 (2d Cir. Aug. 8, 2011) ...........................................28, 29, 30, 31

Missouri v. Jenkins,
   491 U.S. 274 (1989)..................................................................................................................6

Moran v. Sasso,
   No. 05-CV-4716 (DRH) (ETB),
   2009 U.S. Dist. LEXIS 56381 (E.D.N.Y. July 2, 2009).........................................................16

Morgenstern v. County Of Nassau, CV,
   04-58 (ARL), 2009 U.S. Dist. LEXIS 116602 (E.D.N.Y. Dec. 15, 2009) ..............................19

Motorola, Inc. v. Abeckaser,
   No. 07-CV-3963 (CPS), 2009 U.S. Dist. LEXIS 87803 (E.D.N.Y. Aug. 5, 2009)..................16

New York State Ass'n for Retarded Children, Inc. v. Carey,
   711 F.2d 1136 (2d Cir. 1983) ...........................................................................................21, 24

Palopoli v. City of New York,
   305 A.D.2d 388 (N.Y. App. Div. 2d Dep't 2003) ....................................................................9

Quaratino v. Tiffany & Co.,
   166 F.3d 422 (2d Cir. 1999) ...................................................................................................21

Red Cloud-Owen,
   958 F. Supp. at 96 ...................................................................................................................31

Rodriguez v. Pressler & Pressler, L.L.P.,
   2008 U.S. Dist. LEXIS 108059 (E.D.N.Y. Sept. 11, 2008)
   report accepted by in part, rejected in part, CV-06-5103(BMC) (JO),
   2009 U.S. Dist. LEXIS 20655 (E.D.N.Y. Mar. 12, 2009).......................................................13

Santoro v. City Of New York,
   17 A.D.3d 563 (N.Y. App. Div. 2d Dep't 2005) ......................................................................9

Schlant v. Victor Belata Belting Co.,
   94-CV-0915E(Sc), 2001 U.S. Dist. LEXIS 16539 (W.D.N.Y. Oct. 2, 2001) ....................32, 33

Schwenk,
   1998 WL 259907 at 3 ..............................................................................................................31

**Cases**                                                                                                                      **Pages**

Sea Spray Holdings, Ltd.,
   277 F. Supp. 2d at 326 (S.D.NY. 2003) ................................................................................24

Separ v. Nassau County Dept. of Social Services,
327 F. Supp. 2d 187, 191-92 (E.D.N.Y. 2004) ..........................................................35

Simmons v. New York City Transit Auth.,
   575 F.3d 170 (2d Cir. 2009) ...........................................................................................6

Thorsen v. County Of Nassau, CV,
   03-1022 (ARL), 2011 U.S. Dist. LEXIS 27992 (E.D.N.Y. Mar. 17, 2011)...........................12

Trustees Of The Local 813 I.B.T. Ins. Trust Fund v. Amanda Carting Corp.,
   No. 07-CV-656 (FB) (KAM), 2007 U.S. Dist. LEXIS 90334 (E.D.N.Y. Dec. 7, 2007) .........16

Trustees Of The Local 813 I.B.T Ins. Trust Fund v. Sprint Recycling,
   No. 09-CV-04435 (FB) (RER),
   2010 U.S. Dist. LEXIS 96100 (E.D.N.Y. Aug. 6, 2010).........................................15

Valley Disposal Inc. v. Central Vermont Solid Waste Mgmt. Dist.,
   71 F.3d 1053 (2d Cir. 1995) ................................................................... 34-35

Whitney v. Jetblue Airways Corp.,
   07 CV 1397 (CBA) (CLP), 2009 U.S. Dist. LEXIS 118323...................................15

Wise v. Kelly,
   620 F. Supp. 2d 435 (S.D.N.Y. 2008) ...................................................................13

Wong v. Young Yoo,
   04-CV-4569 (JBW) (ALC), 2010 U.S. Dist. LEXIS 111142
   (E.D.N.Y. Oct. 19, 2010)................................................................................14, 20

**Statutes**

Administrative Code of of City of NY § 7-201 [c] [2]....................................................9

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x

MALIK FRYAR,

Plaintiff,

-against-

CITY OF NEW YORK; Police Officer ROBERT ZHEN,
Police Officer MATTHEW KOKORUDA, Police Officer
TYLER KALMAN, Police Officer PETER KESSLER, and
JOHN and JANE DOE 5 through 10, individually and in
their official capacities, (the names John and Jane Doe
being fictitious, as the true names are presently unknown),

Defendants.

------------------------------------------------------------------- x

**DEFENDANTS'
OPPOSITION IN RESPONSE
TO PLAINTIFF'S MOTION
FOR ATTORNEYS' FEES
AND COSTS**

10 CV 5879 (TLM) (MDG)

## PRELIMINARY STATEMENT

Defendants City of New York, Police Officer Zhen and Police Officer Kessler
respectfully submit this memorandum of law in opposition to plaintiff's motion for attorneys'
fees and costs and respectfully submit that plaintiff's request for $124,149 dollars must be
reduced significantly on the grounds that (1) the hourly rates proposed by Mr. Saleem and Mr.
Harvis are unreasonable, (2) the amount of hours expended by plaintiff's counsel in litigating
this matter are unreasonable, and (3) the degree of success obtained by plaintiff is minimal in
light of the amount sought.

## PROCEDURAL HISTORY

Plaintiff filed a complaint in this action on December 17, 2010, alleging nine
claims as a result of his arrest on November 7, 2010.  Specifically, plaintiff's complaint alleged
claims of false arrest, excessive force, failure to intervene, First Amendment retaliation, denial of

a constitutional right to fair trial and municipal liability, all under Federal law, as well as assault, battery and false arrest/false imprisonment under State law.  See Plaintiff's Complaint, annexed to Francolla's Declaration ("Francolla's Decl.") as Exhibit "A," generally.  On January 7, 2010, I spoke with plaintiff's counsel, Afsaan Saleem, Esq., on the telephone during which time he made an initial settlement demand of $125,000 to resolve plaintiff's claims.  See Francolla's Decl., ¶ 3.  Mr. Saleem advised me that his demand was based upon the fact that plaintiff spent 24 hours in custody before he ultimately accepted an Adjournment in Contemplation of Dismissal and that he was punched once in the head during his arrest, but received no medical treatment in response to same.  Id.  Mr. Saleem further advised me that he was in the process of obtaining video footage which he felt would corroborate plaintiff's version of events, and that should he in fact obtain same, plaintiff's demand would increase significantly.  Id.  Because plaintiff's purported damages, even if true, were grossly disproportionate to the amount plaintiff's counsel sought to resolve this matter, his demand was rejected and the parties proceeded with the litigation.  Id.  In that regard, defendants made the determination to await receipt of the video footage of the incident, if any, as well as to depose plaintiff before re-assessing the extent to which settlement should be pursued.  Id.

Upon information and belief, plaintiff's counsel never obtained any video footage of the incident as none was ever produced to defense counsel.  Id. at ¶ 4.  Moreover, plaintiff's deposition proceeded as scheduled on April 26, 2011.  Id.  During plaintiff's deposition, defense counsel learned extensive details about plaintiff all of which lead defendants to decline to respond to plaintiff's initial demand of $125,000.  Id.  Specifically, plaintiff testified that he had been arrested 19 times prior to the date of the incident despite the fact that he was only 20 years old at the time.  See Plaintiff's April 26, 2011 Deposition ("Pl's Dep."), annexed to Francolla's

2

Decl. as Exhibit "B," p. 31: 3 – 17. As a result, the litigation proceeded through discovery which included plaintiff's counsel deposing the four named defendants in this action. See Francolla's Decl., ¶ 6. On May 17, 2011, defense counsel advised the Court via letter that defendants did not intend to move for summary judgment on plaintiff's claims of false arrest, excessive force and failure to intervene, and that plaintiff had agreed to voluntarily withdraw his claims of municipal liability, First Amendment retaliation and denial of a constitutional right to a fair trial. See Docket Entry #19.

The parties appeared for a final pre-trial conference on June 17, 2011, at which time the Court set a trial date which ultimately became September 19, 2011. See Francolla's Decl., ¶ 8. Thereafter, on or about July 19, 2011, plaintiff's counsel conveyed a demand of $20,000 to settle this matter which represented the first time plaintiff's initial demand of $125,000 had been formally reduced. Id. After taking about a week to consider the offer, defense counsel advised plaintiff's counsel that because of the manner in which this litigation had proceeded up to that point, as well as plaintiff's significant criminal history, defendants declined to settle this matter for the amount requested and instead were prepared to proceed to trial as scheduled. Id.

Trial commenced on September 19, 2011, and testimony was completed the following day, September 20, 2011. See Docket Entries dated September 19, 2011, and September 20, 2011. Closing arguments took place on September 21, 2001, during which time plaintiff's counsel asked the jury to award plaintiff $22,000 in damages ($1,000 per hour for his time in custody and $5,000 for the purported excessive force). See Trial Transcript, annexed to Francolla's Decl. as Exhibit "C," pp. 30 – 32. The jury began deliberating on September 21, 2011, and were sent home that evening after not having reached a verdict. See Francolla's Decl.,

¶ 11.  After the jury was dismissed, the Honorable Tucker L. Melancon, United States District Judge for the Eastern District of New York, raised the issue of settlement and directed the parties to discuss same.  Id.  In response, plaintiff's counsel advised defense counsel that plaintiff would be willing to settle the case rather than take a verdict, but that because of the time spent litigating the case up to that point, the amount would be significantly higher than plaintiff's most recent demand of $20,000.  Id.  Defendants declined to resolve the matter for the amount suggested and instead opted to take the verdict from the jury.  Id.

On September 22, 2011, the jury returned a verdict in favor of plaintiff and against defendants Zhen and Kessler on his false arrest and false imprisonment claims, and against plaintiff on his claims of false arrest and false imprisonment as against defendants Kokoruda and Kalman and against plaintiff on his claims of excessive force, failure to intervene, assault and battery as against all defendants.  See Docket Entry #41.  As a result of the verdict, the jury awarded plaintiff $100 in compensatory damages and $500 in punitive damages as against defendant Zhen for a total of $600.  Id.  Judge Melancon dismissed the jury after the verdict was read and discussed the issue of attorneys' fees and costs with counsel for both parties off the record.  See Francolla's Decl., ¶ 13.  During this conversation, Judge Melancon advised plaintiff's counsel to be reasonable in the amount they sought in light of the fact that while they may have obtained justice for their client, they surely did not obtain a substantial amount of money for him.  Id.  Judge Melancon further advised defense counsel to be reasonable as well. Id.  On September 28, 2011, plaintiff's counsel provided defense counsel with an invoice of the fees and costs they would be seeking in the total amount of $115,288.51.  Id.

In response, on October 3, 2011, defense counsel advised plaintiff's counsel that the amount of fees and costs they were seeking was completely unreasonable in light of Judge

Melancon's instruction and more importantly, the verdict plaintiff received.  See Francolla's
Decl., ¶ 14.  Defense counsel further advised that defendants would resolve fees and costs at that
time only if they were willing to reduce the amount sought by 80% to 90% in light of the degree
of success they obtained for their client.  Id.

In sum, defendants declined to formally negotiate with plaintiff's counsel
regarding attorneys' fees and costs because of their unreasonable position, even after being
cautioned by Judge Melancon.  See Francolla's Decl., ¶ 15.  The amount plaintiff's counsel
sought compared to the extremely limited degree of success they obtained for their client, which
borders on nominal, made it apparent that they were seeking a windfall.

## POINT I

## THE REQUESTED HOURLY RATES ARE UNREASONABLE.

In their memorandum of law in support of their motion for attorneys' fees and
costs, plaintiff's counsel seek a rate of $425 per hour for Mr. Saleem and $375 dollars for Mr.
Harvis.  In response, defendants respectfully submit that the rates sought by plaintiff's counsel
are significantly higher than those awarded to attorneys practicing in the Eastern District of New
York with similar levels of experience.

District courts are afforded considerable discretion in determining the amount of
attorneys' fees in any given case.  See Barfield v. New York City Health and Hosps. Corp., 537
F.3d 132, 151 (2d Cir. 2008).  In calculating a reasonable fee award, the Second Circuit has
adopted the "presumptively reasonable fee" approach.  See Arbor Hill Concerned Citizens
Neighborhood Ass'n v. County of Albany and Albany County Bd. of Elections, 522 F.3d 182,
190 (2d Cir. 2008).  "Although the term 'lodestar' is now disfavored by the Second Circuit, the
applicable approach still contemplates (1) a consideration of the number of hours actually spent

by counsel and other personnel that are deemed reasonably necessary to a successful outcome for the client, and (2) the setting of reasonable hourly rates for counsel . . . ." Imbeault v. Rick's Cabaret Int'l Inc., No. 08 Civ. 5458, 2009 U.S. Dist. LEXIS 71562, at *1 (S.D.N.Y. Aug. 13, 2009) ("In determining a 'reasonable' fee, the 'most useful starting point . . . is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.'" (quotation omitted). "The presumptively reasonable fee boils down to what a reasonable, paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively." Simmons v. New York City Transit Auth., 575 F.3d 170, 174 (2d Cir. 2009) (quotation marks and citation omitted).

"The reasonable hourly rate is the rate a paying client would be willing to pay." Arbor Hill, 522 F.3d at 190. In determining the reasonable hourly rates to be applied, courts should look to the market rates "'prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" Gierlinger v. Gleason, 160 F.3d 858, 882 (2d Cir. 1998) (quoting Blum v. Stenson, 465 U.S. 886, 896 n.11, (1984)). Moreover, the "presumptively reasonable fee" standard uses the hourly rates employed in the district in which the reviewing court sits, unless the party seeking fees "persuasively establish[es] that a reasonable client would have selected out-of-district counsel because doing so would likely (not just possibly) produce a substantially better net result." Simmons, 575 at 174-75 (internal quotation omitted). To compensate for the delay in payment, the hourly rates to be used should be "'current rather than historic hourly rates.'" Gierlinger, 160 F.3d at 882 (quoting Missouri v. Jenkins, 491 U.S. 274, 284 (1989)).

Based on the applicable case law, including the authority relied upon by plaintiff's counsel in their moving papers, defendants submit that the hourly rates sought by Mr.

Saleem and Mr. Harvis are unreasonable. Furthermore, because no client would presumably pay $124,149 dollars in attorneys' fees in order to recover $600 dollars in damages, the hourly rates sought by plaintiff's counsel should be reduced in such a manner so as to reflect the accurate rate a client would be willing to pay for similar services by lawyers of reasonably comparable skill, experience, and reputation. In that regard, plaintiff's counsel is seeking rates for both Mr. Saleem and Mr. Harvis which reflect an amount higher than their respective years of experience would otherwise warrant when compared to the relevant case law in the Eastern District – including the specific authority plaintiff's counsel relies upon. Thus, in essence, plaintiff's counsel is arguing that while they may have less years of experience than the rates they propose would suggest, their experience is of the type which entitles them to a premium. Accordingly, defendants must examine the experience highlighted by both Mr. Saleem and Mr. Harvis in greater detail in order to determine whether such experience is exceptional to the point that they should each be a paid at an hourly rate significantly higher than what their respective years of experience would otherwise dictate in light of the controlling authority in this district.

Mr. Saleem's Experience:

Mr. Saleem argues that he should be awarded the rather substantial sum of $425 dollar per hour based upon his "extensive background in litigating complex civil rights and constitutional law cases." See Plaintiff's Memorandum of Law in Support of Their Motion for Attorneys' Fees and Costs ("Pl.'s Memo"), p. 11. Specifically, Mr. Saleem indicates that he has been practicing law for 10 years with a particular expertise in "false arrest and malicious prosecution cases." Id. In support of his proposed rate, Mr. Saleem details his experience during the last 10 years, the majority of which came while he was employed by the Office of the Corporation Counsel. Specifically, Mr. Saleem was employed in the Brooklyn Tort Division

from August of 2001 until September of 2006.  Thereafter, Mr. Saleem was assigned to the Special Federal Litigation Division where he was employed from September 2006 until September 18, 2010.  After leaving the Office of the Corporation Counsel in September of 2010, Mr. Saleem partnered with Mr. Harvis to form Harvis & Saleem, LLP.

As an initial matter, several misrepresentations made by Mr. Saleem regarding his employment with the Office of the Corporation Counsel need to be clarified.  First, Mr. Saleem states that he was assigned to the "role of supervising attorney on the class action entitled *Kadian McBean, et al. v. City of New York*, 02-CV-5426 (JGK) (THK) and the related action brought by intervenor-plaintiffs, *Joel Ramos, et al. v. City of New York.*"  See Declaration of Afsaan Saleem in Support of Motion for Attorneys' Fees and Costs ("Saleem Decl."), ¶ 8.  This representation is simply not true.  See Declaration of Muriel Goode-Trufant ("Goode-Trufant Decl.") annexed to Francolla's Decl. as Exhibit "D," ¶ 2.  In fact, Mr. Saleem is not even listed on the docket sheet for the matter.  See McBean, et al v. The City of New York, et al., 02-cv-05426 (JGK) (THK), annexed to Francolla's Decl. as Exhibit "E."  Similarly, Mr. Saleem states that he was "lead counsel in the 2007 trial of *Green v. City of New York* before the Honorable Richard M. Berman in the Southern District of New York."  See Saleem Decl. at ¶ 12.  Again, this is not true.  See Goode-Trufant Decl. at ¶ 3.  In fact, another attorney is explicitly listed on the docket sheet as being lead counsel in that matter while Mr. Saleem is not.  See Green, et al v. City of New York, et al., 01-cv-01996 (RMB) (GWG), annexed to Francolla's Decl. as Exhibit "F."

Additionally, while Mr. Saleem states that he has been practicing law for 10 years with a particular expertise in "false arrest and malicious prosecution cases," the cases he refers to in his declaration as having worked on while assigned to the Brooklyn Torts Division from 2001 until September of 2006 do not support that assertion.  Specifically, the four cases Mr. Saleem

has chosen to highlight all involved routine personal injury claims and do not pertain in any way to false arrest and/or malicious prosecution cases, or any civil rights claims for that matter.  See Saleem Decl., ¶¶ 5 and 6; Dick v. Gap, Inc., 16 A.D.3d 615, 615-616 (N.Y. App. Div. 2d Dep't 2005) (The defendants established, as a matter of law, that the alleged defect in the public sidewalk was trivial and nonactionable and did not possess the characteristics of a trap or nuisance); Santoro v. City of New York, 17 A.D.3d 563, 564 (N.Y. App. Div. 2d Dep't 2005) (The alleged negligence of the defendant City of New York consisted of its purported failure to properly direct traffic at the scene of the injured plaintiff's accident); Palopoli v. City of New York, 305 A.D.2d 388 (N.Y. App. Div. 2d Dep't 2003) (The injured plaintiff slipped and fell while walking on a public sidewalk abutting the property of the defendant during an ongoing snowstorm); D'Onofrio v. City of New York, 2008 NY Slip Op 9860, 2 (N.Y. 2008) (In each of these cases, the issue is whether a map submitted to New York City by Big Apple Pothole and Sidewalk Protection Corporation gave the City the notice of a sidewalk defect that is required by the Pothole Law (Administrative Code of City of NY § 7-201 [c] [2])).

Mr. Harvis' Experience:

Mr. Harvis argues that he should be entitled to the similarly high hourly rate of $375 dollars per hour despite the fact that he has only been practicing law for five years.  See Pl.'s Memo, p. 18.  Mr. Harvis bases his proposed rate almost entirely on his experience working for the Office of the Corporation Counsel from September 2006 until September 2010.  See Declaration of Gabriel Harvis in Support of Motion for Attorneys' Fees and Costs ("Harvis' Decl."), ¶¶ 6 – 12.  While Mr. Harvis' representations as to his employment with the Office of the Corporation Counsel appear to be accurate, his reliance on same in support of his argument

that he deserves to paid an exorbitant hourly rate despite only having practiced law for five years is misplaced.

Mr. Harvis highlights nine separate matters he worked on during his tenure with the Office of the Corporation Counsel in an attempt to justify the exorbitant hourly rate he seeks based upon his role in same.  Specifically, the cases relied upon by Mr. Harvis include four jury trials, one of which included an evidentiary inquest, four successful summary judgment motions and one successful opposition to a plaintiff's motion for reconsideration of defendants' successful motion to compel discovery.  While the results obtained by Mr. Harvis are for the most part positive, it bears noting that six of the nine cases he references were brought by *pro se* litigants.

In fact, the undersigned served as Mr. Harvis' co-counsel in the trial of <u>Hector Garcia v. City of New York</u>, 07-CV-4331 (SJF) (RER), before the Honorable Sandra J. Feuerstein, United States District Judge for the Eastern District of New York, where we obtained a successful defense verdict as to plaintiff's claim of excessive force.  <u>See</u> Francolla's Decl., at ¶ 19.  In that regard, and to clarify Mr. Harvis' inaccurate description of the trial as set forth in his declaration, plaintiff's false arrest claim was not tried as it had been dismissed prior to trial due to the fact that plaintiff had plead guilty to the underlying offense for which he had been arrested. <u>Id.</u>  Furthermore, plaintiff, who was incarcerated at the time of the trial, proceeded in the action *pro se* and could not speak English.  <u>Id.</u>  Thus, while the result was clearly a successful outcome, the experience gained was surely not the type that would enable Mr. Harvis, or myself for that matter, to justify that we deserve a higher hourly rate than other attorneys who have been practicing for the same amount of time as we have.

In order to justify his proposed hourly rate, Mr. Harvis also notes that he "was assigned to handle the high-profile matter of *Carmichael v. City of New York*, 06-CV-1913 (NG) (VVP)." See Harvis Decl., ¶ 12. Although Mr. Harvis was technically assigned to work on that case for a brief period of time, his involvement appears to have been quite minimal. Specifically, he filed a Notice of Appearance on July 15, 2010. See Carmichael v. City of New York, 06-CV-1913 (NG) (VVP), Entry #65. Thereafter, he was assigned to work on the case for approximately two months until he left the Office of the Corporation Counsel in September 2010 during which time the only work he did as reflected by the docket sheet was to file a two page letter on August 18, 2010. Id. at Entry #70.

Mr Saleem's Proposed Rate:

In support of his proposed hourly rate of $425 dollars per hour, Mr. Saleem points to three recent cases from this district which he argues justifies his requested rate based upon the apparent similarity between his experience as referenced above and the experience of the attorneys discussed in the three cases upon which he relies. See Pl.'s Memo, p. 17. Defendants submit, however, that an accurate comparison of Mr. Saleem's experience to the experience of attorneys referenced in the cases he relies upon for support of his proposed rate reveals that his reliance is misplaced.

In Blount v. City of New York, 11-CV-124 (BMC), the Honorable Brian M. Cogan awarded plaintiff's counsel Michael Lumer, Esq.[1], the hourly rate of $425 dollars per hour – the same rate sought by Mr. Saleem in this matter. Judge Cogan's decision was based upon several factors. Specifically, Judge Cogan noted that the action at issue "was more complicated than the usual § 1983 case, with the allegations stemming from two separate

---

[1] Upon information and belief, Mr. Lumer is a 1995 graduate of Brooklyn Law School.

11

incidents and with an unusual volume of underlying documents." <u>Blount</u>, 11-CV-124 (BMC), p. 2. Judge Cogan further noted that plaintiff's counsel "has over fifteen years of experience, appearing more than 150 federal lawsuits, including numerous actions before this Court in which he has performed ably." <u>Id.</u> To the contrary, this matter was extremely simple as it involved one incident and only a total of approximately 88 pages of documents produced throughout the entirety of the litigation up to and including trial. With regard to the trial, testimony was concluded after only two days. Lastly, and notably, Mr. Saleem has only 10 years of experience, compared to Mr. Lumer's 15, with arguably only five of those years focused solely on § 1983 litigation. Thus, it is unclear how Mr. Saleem can justify the same rate as that awarded to Mr. Lumer by Judge Cogan in light of the fact that the case at issue is substantially less complicated than the case before Judge Cogan and further, Mr. Saleem has at least five years less experience.

Mr. Saleem also references <u>Thorsen v. County of Nassau</u>, CV 03-1022 (ARL), 2011 U.S. Dist. LEXIS 27992 (E.D.N.Y. Mar. 17, 2011) in support of his proposed hourly rate. <u>See</u> Pl.'s Memo, p. 17. In <u>Thorsen</u>, the Honorable Arlene Rosario Lindsay awarded plaintiff's counsel Louis Stober, Jr., Esq., the hourly rate of $425 dollars per hour – the same rate sought by Mr. Saleem. <u>Thorsen</u>, 2011 U.S. Dist. LEXIS 27992 at *16-17. However, again, it is unclear how Mr. Saleem can in good faith compare his experience to that of Mr. Stober who at the time of that decision had been practicing law for 26 years during which time he earned the reputation as a well known labor and employment attorney who had appeared before Judge Lindsay numerous times. <u>Id.</u> In that regard, it is not only incomprehensible how Mr. Saleem can propose an hourly rate for himself equal to that of an attorney who has 16 years more experience than he does and who has been practicing law for than double the time he has, to the contrary, the

Thorsen decision suggests that an accurate rate for Mr. Saleem should be significantly lower than the amount which he seeks.

To the extent Mr. Saleem relies upon Rodriguez v. Pressler & Pressler, L.L.P., CV-06-5103(BMC) (JO), 2009 U.S. Dist. LEXIS 20655 (E.D.N.Y. Mar. 12, 2009) in support of his proposed hourly rate, defendants submit that his reliance is again misplaced.   See Pl.'s Memo, p. 17.   In Rodriguez, Judge Cogan awarded plaintiff's counsel Matthew Brinckerhoff, Esq., of the law firm of Emery, Celli, Brinckerhoff & Abady, LLP, an hourly rate of $450 dollars per hour in a lawsuit which arose under the Fair Debt Collection Practices Act.   As an initial matter, at the time of that decision, Mr. Brinckerhoff had seventeen years of experience as a civil rights attorney.   See Rodriguez v. Pressler & Pressler, L.L.P., 2008 U.S. Dist. LEXIS 108059, 13-14 (E.D.N.Y. Sept. 11, 2008) (report accepted by in part, rejected in part, Rodriguez v. Pressler & Pressler, L.L.P., 2009 U.S. Dist. LEXIS 20655).   Additionally, the law firm where Mr. Brinckerhoff was a partner at the time, Emery, Celli, Brinckerhoff & Abady, LLP, is widely considered to be a prestigious civil rights law firm.   See Wise v. Kelly, 620 F. Supp. 2d 435, 446 (S.D.N.Y. 2008).   Lastly, in his decision, Judge Cogan noted that plaintiff's counsel obtained the maximum possible monetary relief available under the statute.   See Rodriguez, 2009 U.S. Dist. LEXIS 20655 at *3.   Here, however, Mr. Saleem has considerably less experience than Mr. Brinckerhoff in both the amount of his experience as well as the quality of same, the type of litigation at issue is significantly less complicated and notably, the rate of success he obtained for plaintiff is almost the opposite of what Mr. Brinckerhoff obtained for his client in Rodriguez. Specifically, Mr. Saleem obtained a verdict in the amount of $600 dollars after a jury determined that his client had been spent 17 hours in custody after being falsely arrested.   As noted in the

procedural history section above, and as will be explained in more detail in Point III, infra, such a result can only at best be considered a de minimis victory.

A review of other recent case law in the district which Mr. Saleem declines to mention in support of his proposed hourly rate also demonstrates that the rate he seeks is significantly higher than what his experience warrants. For example, defendants submit that the case of Wong v. Young Yoo, 04-CV-4569 (JBW) (ALC), 2010 U.S. Dist. LEXIS 111142 (E.D.N.Y. Oct. 19, 2010), is far more similar to the factual circumstances at issue in this matter. In Wong, the Honorable Andrew L. Carter awarded plaintiff's counsel, Alan D. Levine, Esq., an hourly rate of $375 per hour declining to adopt Mr. Levine's proposed rate of $400 per hour. At the time of the decision, Mr. Levine had over 30 years of experience, was a solo practitioner dedicating the majority of his practice to civil rights cases and successfully represented plaintiff in a matter that was pending for over six years which resulted in an award for his client in the amount of $200,000 in damages. Wong, 2010 U.S. Dist. LEXIS 111142 *3-7 (E.D.N.Y. Oct. 19, 2010). In reducing Mr. Levine's hourly rate to $375 per hour, Judge Carter based his decision on the fact that Mr. Levine is a solo practitioner with less overhead and fixed costs than law firm partners who were awarded $400 per hour for fees in other cases in the district and because the outcome resulted in only partial success. Id. at *7. Specifically, plaintiff received only a partial judgment and was successful with respect to his claims against only one of the four defendants in the case. Id.

Judge Carter's decision in Wong is instructive here because he awarded an attorney with over 30 years of experience, the majority of which focused solely on civil rights law, an hourly rate of $375 per hour – $50 less than what Mr. Saleem seeks in this matter. Moreover, Judge Carter factored in the partial degree of success obtained -- an amount of success

that was significantly higher than what Mr. Saleem has attained for his client in this matter -- as a justification for lowering Mr. Levine's proposed hourly rate. Lastly, Judge Carter noted that because plaintiff was a solo practitioner, he had less overhead and fixed costs than law firm partners would indicating that his hourly rate should be less than the amount attorneys with similar experience employed by law firms should be awarded. Similarly, here, Mr. Saleem's law firm consists only of himself and his partner, Mr. Harvis. As such, Mr. Saleem's overhead and fixed costs are presumably much less than that of law firm partners along with whom he seeks to be considered as an equal for the purposes of establishing his hourly rate. See Chambless v. Masters, Mates & Pilots Pension Plan, 885 F.2d 1053, 1058 (2d Cir. N.Y. 1989) (noting that courts do not need to assign the same rate to every law firm in the district because billing rates for attorneys at larger firms are generally higher than rates for attorneys at smaller firms). In that regard, Mr. Saleem provided evidence of such a conclusion in his moving papers where he states that he and Mr. Harvis absorbed only $10,000 in expenses for having litigated a case through motion practice and trial. See Pl.'s Memo, p. 15.

Defendants submit that the relevant case law in this district suggests that Mr. Saleem, at best, should be awarded an hourly rate of $325 dollars per hour. See, e.g., Trustees of the Local 813 I.B.T Ins. Trust Fund v. Sprint Recycling, No. 09-CV-04435 (FB) (RER), 2010 U.S. Dist. LEXIS 96100, at *4 (E.D.N.Y. Aug. 6, 2010) (finding that reasonable rates for partners range from $200 to $350 in the E.D.N.Y.); Blue v. Finest Guard Services, Inc., No. 09-CV-133 (ARR), 2010 U.S. Dist. LEXIS 73223, at * 15 (E.D.N.Y. Jun. 24, 2010) (awarding $325/hr. to an attorney with twenty years of experience); see also Whitney v. JetBlue Airways Corp., 07 CV 1397 (CBA) (CLP), 2009 U.S. Dist. LEXIS 118323, at *7 (listing cases and approving an hourly rate of $350 for an attorney with 28 years of experience as a partner in a

relatively small firm, consisting of between 15 and 20 lawyers who had been seeking a $450 hourly rate); see e.g. Gutman v. Klein, No. 03-CV-1570 (BMC), 2009 U.S. Dist. LEXIS 123057, at *2-3 (E.D.N.Y. Oct. 13, 2009) (approving hourly rates between $300 and $400 for partners, $200 and $300 for senior associates, and $100 and $200 for junior associates); Melnick v. Press, No. 06-CV-6686 (JFB) (ARL), 2009 U.S. Dist. LEXIS 77609, at *9 (E.D.N.Y. Aug. 28, 2009) (noting market rates of between $200 and $375 for partners and between $100 and $295 for associates); Moran v. Sasso, No. 05-CV-4716 (DRH) (ETB), 2009 U.S. Dist. LEXIS 56381, at *4 (E.D.N.Y. July 2, 2009) (noting rates of $200 to $350 for partners and $200 to $250 for senior associates); Duverger v. C & C Duplicators, Inc., No. 08-CV-0721 (DRH) (ARL), 2009 U.S. Dist. LEXIS 53859, at *2 (E.D.N.Y. June 25, 2009) (listing market rates as between $200 and $350 for partners, and $200 and $250 for senior associates); Motorola, Inc. v. Abeckaser, No. 07-CV-3963 (CPS), 2009 U.S. Dist. LEXIS 87803, at *4-5 (E.D.N.Y. Aug. 5, 2009);

Notwithstanding the extensive amount of case law to the contrary noted in the paragraph above, Mr. Saleem has attached declarations from Joel Berger, Esq., Fred Lichtmacher, Esq., and Jon L. Norinsberg, Esq., all of whom in extensive detail explain their own respective experience and qualifications before ultimately attesting that $425 dollars per hour is well within the bound of hourly rates charged by lawyers of Mr. Saleem's experience and ability. See Pl.'s Memo, p. 17. As an initial matter, it is clear from the declarations they provided in support of plaintiff's motion for attorneys' fees and costs that Mr. Berger, Mr. Lichtmacher and Mr. Norinsberg all have substantially more experience than does Mr. Saleem. Thus, and notably, each of them stand to benefit significantly if an attorney such as Mr. Saleem

16

with far less experience is awarded $425 dollars per hour as thereby they will be able to seek and presumably justify substantially more per hour for themselves by comparison.[2]

In sum, Mr. Saleem can point to no case law in this district where an attorney of reasonably comparable skill, experience, and reputation was awarded $425 dollar per hour especially considering the simplicity of this case as well as the extremely limited amount of success obtained. Moreover, Mr. Saleem apparently chooses to ignore the multitude of recent cases in this district where attorneys with substantially more experience than him who achieved more success in litigating matters that were in some cases far more complex were awarded significantly less per hour than he seeks. Accordingly, defendants submit that Mr. Saleem's experience dictates that he should be awarded $300 dollars per hour and at most, $325.

<u>Mr Harvis' Proposed Rate</u>:

Mr. Harvis, despite only five years of experience, seeks a rate of $375 dollar per hour. As noted above in the section analyzing Mr. Harvis' experience, his proposed rate is based almost entirely on the experience he has gained while employed by the Office of the Corporation Counsel. In particular, Mr. Harvis highlights the amount of cases he was assigned to while employed by the Office of the Corporation Counsel in order to establish that he deserves to be paid at an exorbitant rate in light of his limited experience. <u>See</u> Harvis Decl., ¶15. Mr. Harvis argues that because he has appeared in approximately 150 lawsuits – the amount noted by Judge Cogan in <u>Blount</u> with respect to the hourly rate awarded Michael Lumer, Esq. – he should similarly be awarded a rate higher than the amount of time he has been practicing would otherwise justify.

---

[2] Defendants submit that the same argument is applicable to the extent Mr. Harvis relies upon a declaration submitted by Jeffrey Rothman, Esq.

In response, defendants expect that the Court is in a position to take judicial notice of the fact that working in the Special Federal Litigation Division at the Office of the Corporation Counsel requires that an Assistant Corporation Counsel handle an extensive caseload almost immediately upon beginning his or her employment in light of the significant amount of § 1983 lawsuits filed in both the Eastern and Southern Districts of New York.  In that regard, and so as to provide the Court with specific context, the undersigned graduated from New York Law School in 2007 and immediately began employment with the Office of the Corporation Counsel in September of 2007 as a member of the Special Federal Litigation Division.  See Francolla's Decl., at ¶20.  As a result of my employment, I have been assigned to and/or appeared in at least 148 different civil rights matters in the little more than four years I have worked as an Assistant Corporation Counsel.  See New York City Law Department Open Matters for Assistant Corporation Counsel Brian Francolla, annexed to Francolla's Decl. as Exhibit "G."  Accordingly, Mr. Harvis' experience working at the Office of the Corporation Counsel is not unique and is likely similar to that of most attorneys who begin their legal careers working for a government agency, specifically the New York City Law Department.

In support of Mr. Harvis' position that despite his limited experience, he should be awarded the hourly rate of $375 per hour, Mr. Harvis relies upon the case of Artemide Inc. v. Spero Elec. Corp., CV 09-1110 (DRH) (ARL), 2010 U.S. Dist. LEXIS 136870 (E.D.N.Y. Nov. 23, 2010) for the proposition that "Current prevailing rates for partners in the Eastern District range from $350 to $450."  See Pl.'s Memo, p. 19.  Of note, however, is the fact that Mr. Harvis did not include the citations upon which the Court in Artemide Inc. relied.  In that regard, had Mr. Harvis included the citation relied upon by the Court it would be clear that based upon his experience, he does not warrant an hourly rate of $375 per hour.  See Artemide Inc., 2010 U.S.

Dist. LEXIS 136870 at *10-11 (Current prevailing rates for partners in the Eastern District range from $350 to $450) (citing Lochren v. County of Suffolk, CV 01-3925 (ARL), 2010 U.S. Dist. LEXIS 28288 (E.D.N.Y. Mar. 23, 2010) (awarding partner with 40 years of experience $450); Luca v. County of Nassau, No. 04-CV-4898, 698 F. Supp. 2d 296 (E.D.N.Y. Jan. 25, 2010) (awarding partner with 25 years experience $400, and partner with 14 years $375); Morgenstern v. County of Nassau, CV 04-58 (ARL), 2009 U.S. Dist. LEXIS 116602 (E.D.N.Y. Dec. 15, 2009) (awarding $400 per hour in a § 1983 case).  Specifically, the citation Mr. Harvis chose to omit demonstrates that an attorney with 40 years of experience was awarded $450 per hour, an attorney with 25 years of experience was awarded $400 per hour and that an attorney with 14 years of experience was awarded $375 per hour – the amount Mr. Harvis requests despite having only five years of experience.

In fact, it appears that the only thing in common between Mr. Harvis and the attorneys discussed in the cases relied upon by the Court in Artemide Inc. is the fact that they are all technically considered to be "partners" in their respective law firms.  However, Mr. Harvis' experience pales in comparison.  Defendants submit that the reasonable hourly rate a paying client would be willing to pay is not and cannot be predicated solely on whether an attorney has the title of partner, but rather that particular attorney's experience.  Here, it appears that solely by virtue of the fact that Mr. Harvis is considered a "partner" in his law firm that employs only one other person, Mr. Saleem, he should be afforded rates in line with attorneys who, while also technically considered to be "partners" in their respective firms, have significantly more experience than he does.

Accordingly, defendants submit that Mr. Harvis' hourly rate should be determined based upon his experience and not simply on the fact that he is considered to be a "partner" in his

law firm.  Under such an analysis, it is clear that he should not be entitled to $375 dollars per hour.  See Capone v. Patchogue-Medford Union Free Sch. Dist., 04-CV-2947 (JS) (MLO), 2011 U.S. Dist. LEXIS 18194, 9-10 (E.D.N.Y. Feb. 23, 2011) (Seven associates were awarded a rate of $180.00 per hour with five, six, two, eleven, ten, nine, fourteen and four years of experience respectively); Brady v. Wal-Mart Stores, Inc., 03-CV-3843 (JO), 2010 U.S. Dist. LEXIS 115380 (E.D.N.Y. Oct. 29, 2010) (the court approved $225 per hour for associates with more than five years' experience) see also, Coated Fabrics Co. v. Mirle Corp., No. 06-CV-5415, 2008 WL 163598, at *7 (E.D.N.Y. Jan. 16, 2008) (adopting report and recommendation) ("Hourly rates approved in recent Eastern District of New York cases have ranged from . . . $200 to $250 for senior associates and $100 to $150 for junior associates."); La Barbera v. Les Sub-Surface Plumbing, Inc., No. 06-CV-3343 06-CV-3343 (NG) (KAM), 2007 U.S. Dist. LEXIS 98804, at *8 (E.D.N.Y. Dec. 11, 2006) (awarding $250 per hour for an associate with six years' experience).

The Wong case is also instructive with regard to Mr. Harvis' proposed hourly rate as he is seeking the same rate – $375 per hour – which Judge Carter awarded to an attorney with over 30 years of experience, the majority of which focused solely on civil rights law.  Wong, 2010 U.S. Dist. LEXIS 111142 at *3-7.  In sum, Mr. Harvis, like Mr. Saleem, can point to no case law in this district where an attorney of reasonably comparable skill, experience, and reputation was awarded $375 dollars per hour and further, also chooses to ignore recent cases in this district where attorneys with substantially more experience than him who achieved more success in litigating matters that were in some cases far more complex were awarded significantly less per hour than he now seeks.  Accordingly, defendants submit that Mr. Harvis' experience dictates that he should be awarded $225 dollars per hour and at most, $250.

## POINT II

## THE AMOUNT OF HOURS EXPENDED BY PLAINTIFF'S COUNSEL MUST BE REDUCED.

In reviewing a fee application, the district court must examine the particular hours expended by counsel with a view to the value of the work product of the specific expenditures to the client's case. See Lunday v. City of Albany, 42 F.3d 131, 133 (2d Cir. 1994); DiFilippo v. Morizio, 759 F.2d 231, 235 (2d Cir. 1985). If any expenditure of time was unreasonable, the court should exclude these hours from the calculation. See Hensley v. Eckerhart, 461 U.S. 424, 434 (U.S. 1983); Lunday, 42 F.3d at 133. The court should thus exclude "excessive, redundant or otherwise unnecessary hours, as well as hours dedicated to severable unsuccessful claims." Quaratino v. Tiffany & Co., 166 F.3d 422, 425 (2d Cir. 1999). A party seeking attorneys' fees bears the burden of supporting its claim of hours expended by accurate, detailed and contemporaneous time records. New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1147-48 (2d Cir. 1983). A court has broad discretion to "trim the fat" in an application for attorneys' fees, and to eliminate excessive or duplicative hours. See, e.g., Kirsch v. Fleet Street, Ltd., 148 F.3d 149, 173 (2d. Cir. 1988); Carey, 711 F.2d at 1146-47.

Defendants submit that the Court should exclude a portion of the hours expended by plaintiff's counsel in litigating this matter which are clearly excessive, redundant and otherwise unnecessary. The most glaring portion of the plaintiff's bill for attorneys' fees pertains to a discovery dispute between the parties. Plaintiff's counsel has billed 34.1 hours of time, totaling $12,922 dollars, for hours expended litigating a discovery dispute where plaintiff was not only unsuccessful, but where plaintiff's counsel was actually sanctioned for engaging in bad faith discovery practices. See Docket Entry #15, generally. Specifically, defendants

requested that plaintiff execute an unsealing release so that defendants could access records pertaining to his 19 prior arrests. Id. at p. 1. Despite the fact that such information is clearly discoverable, especially when a party has been arrested as many times as plaintiff had been prior to the incident, plaintiff's counsel objected in an attempt to unreasonably block discovery. Id. In fact, Judge Cogan explicitly stated in his decision that there was no colorable argument which could support plaintiff's position. Id. In granting defendants' motion to compel as to this issue, Judge Cogan went so far as to state that "Plaintiff's counsel agreed to take on a false arrest case on behalf of a client who had been arrested 19 prior times, and while the Court reserves ruling on how much, if anything, about those arrests will be disclosed to the jury, the information surrounding them is not going to be hidden from defendants." Id. at p. 2.

     Similarly, defendants also sought from plaintiff the addresses of two non-party witnesses, his close friend and cousin, so that defense counsel could depose them in advance of trial as plaintiff had indicated that he would call them as witnesses should the case proceed that far. Id. Despite plaintiff's close relationship to the two non-party witnesses, plaintiff's counsel refused to provide defense counsel with the addresses of these individuals and instead went so far as to suggest that defendants had a duty to hire an investigator in order to obtain this information. Id. at pp. 2 – 3. In granting plaintiff's motion to compel as to this issue, Judge Cogan stated that "it is absurd to suggest that defendants have some duty to hire an investigator and track these people down when all plaintiff has to do is pick up the phone (or less)." Id.

     As a result of both disputes, Judge Cogan sanctioned plaintiff's counsel in the amount of $200 "for engaging in bad faith discovery practices." Id. at p. 1. Thereafter, plaintiff's counsel filed a motion for reconsideration which Judge Cogan granted in part by Order dated May 5, 2011, as follows:

"ORDER granting Motion for Reconsideration, in the exercise of discretion, to the extent of vacating that portion of the Court's prior order imposing sanctions, although the Court adheres to its finding that plaintiff's counsel had no colorable basis for the positions he took. The one-line orders on which he relies are hardly convincing as compared to the fundamental requirements and common-sense application of Rule 26 to the disputes between these parties. Moreover, plaintiff had ample notice that he was exposed to sanctions for his discovery conduct, as the Court had previously warned him in at least one prior conference. Plaintiff's counsel is again advised that any future conduct of this nature will result in sanctions that will not be vacated."

While plaintiff's counsel was successful in eliminating the monetary sanction via their motion for reconsideration, Judge Cogan's decision in that regard made clear that his opinion that plaintiff's counsel had no colorable basis for the positions they took remained unchanged. Defendants acknowledge that with respect to unsuccessful discovery applications, fee awards are not typically reduced simply because a party has failed to prevail on every contention. See Grant v. Martinez, 973 F.2d 96, 99 (2d Cir. 1992) (relevant query not "whether hindsight vindicates an attorneys' time expenditures, but whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures."). However, defendants respectfully submit that the conduct at issue is surely not typical nor is it the type of work that a reasonable attorney would have engaged in as evidenced by the fact that Judge Cogan explicitly declared that the work was undertaken in bad faith.

Moreover, should plaintiff's counsel be compensated for what can only be considered vexatious litigation, it would create a disturbing precedent whereby counsel for a party could advocate a position without any merit and then be awarded fees for time spent litigating arguments they had no colorable basis to make in the first place. In essence, plaintiff's counsel will have been awarded attorneys' fees compensating them for litigation which has already been declared to have been undertaken in bad faith. Such a result would surely lead to a

perverse incentive.   For example, the amount plaintiff's counsel seeks for attorneys' fees regarding this issue – 34.1 hours – is more than double the amount billed for depositions of plaintiff and the four defendants which only totaled 15.3 hours.  It is unfathomable that a paying client would authorize his counsel to expend twice as much time and money on an issue completely without merit than he would on conducting the depositions of the parties in the case. Accordingly, defendants submit that the Court should exclude as unreasonable the 34.1 hours plaintiff's counsel devoted to a discovery dispute which resulted in their getting sanctioned and which never should have been raised.

Moreover, the hours billed are excessive as some of the time claimed was spent on duplicative work.  "Courts in this Circuit are permitted to reduce an excessive fee request by making an across-the-board percentage for redundant or otherwise unnecessary hours." Builders Bank v. Rockaway Equities, LLC, 08-CV-3575 (MDG), 2011 U.S. Dist. LEXIS 107409, at *28-29 (E.D.N.Y. Sept. 23, 2011) (citing Kirsch, 148 F.3d at 173 (court should "deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application"); Carey, 711 F.2d 1146 (since "it is unrealistic to expect a trial judge to evaluate and rule on every entry in an application" courts may apply across the board percentage cuts); Sea Spray Holdings, Ltd., 277 F.Supp.2d at 326 (S.D.N.Y. 2003) (applying flat 15% reduction in fees); Carrero v. New York City Hous. Auth., 685 F. Supp. 904, 908 (S.D.N.Y. 1988) (stating reductions will be made "where the attorneys essentially duplicated each other's efforts"), aff'd, 890 F.2d 569 (2d Cir. 1989)).

In Builders Bank, supra, Your Honor applied a 30% reduction of fees for overstaffing and redundant billing, where many of the billing entries describe telephone

conferences and email exchanges between attorneys for which multiple attorneys billed. Similarly, counsel here engage in redundant and duplicative billing.[3]

 In addition to double billing for conferring, discussing and reviewing with one another, both counsel bill for speaking with a manager concerning a surveillance video and preparing their client for his deposition – services which do not require both attorneys.  Further, counsel double billed for trial preparation.  Mr. Harvis did not deliver the closing statement, but

---

[3]Defense counsel has emboldened the entries which at minimum, should be excluded.

| Page | Date | Services | Hours |
|------|------|----------|-------|
| 2 | 1/18/11 | Conversation with Keyfood/Grenadier Realty Co. | **0.2 for AS**; 0.3 for GPH |
| 4 | 4/22/11 | Prepare client for deposition | 2 for AS; **2 for GPH** |
| 7 | 5/17/11 | Discuss with GPH/AS about withdrawing claims | 0.3 for AS; **0.3 for GPH** |
| 12/13 | 9/7/11 | Confer w/ GPH/AS re: omission of City in JPTO | 0.3 for AS; **0.3 for GPH** |
| 13 | 9/8/11 | Confer w/ GPH/AS re: researching issues for trial | 0.3 for AS; **0.3 for GPH** |
| 14 | 9/16/11 | Trial Prep (On-site inspection) | 2.5 for AS; **3.5 for GPH** |
| 14 | 9/16/11 | Trial Prep (Cross of officers) | 2 for AS; **2.5 for GPH** |
| 15 | 9/17/11 | Trial Prep Prepare client | **1.3 for AS**; 2 for GPH |
| 15 | 9/17/11 | Trial Prep Cross of Officers | 8.2 for AS; **3.3 for GPH** |
| 15 | 9/17/11 | Confer with GPH/AS re: direct of P | **0.1 for AS**; 0.1 for GPH |
| 15 | 9/18/11 | Review photos of location/choose exhibits for trial | 0.9 for AS; **1.4 for GPH** |
| 15/16 | 9/19/11 | Trial Prep of client | **1.5 for AS**; 1.5 for GPH |
| 15/16 | 9/19/11 | Trial Prep Cross of Ds | 2 for AS; **2 for GPH** |
| 16 | 9/20/11 | Trial Prep Prepare Closing | 5.7 for AS; **3.2 for GPH** |
| 16 | 9/20/11 | Trial Prep (confer w/ GPH/AS about P direct) | **0.1 for AS**; 0.1 for GPH |

yet he billed 3.2 hours for its preparation. Mr. Harvis did not cross-examine any defendants, yet he billed 5.3 hours for it. Both attorneys billed for preparing the client for trial, but it was only Mr. Harvis who examined plaintiff at trial. Based on the aforementioned, an across the board reduction should be made, or in the least, the duplicative billing entries should not be considered. In order to assist the Court, defendants have determined that a conservative estimate of the time which should be excluded because it is duplicative, at a minimum, equals 22 hours represented by the emboldened entries in footnote 2 above for which plaintiff was charged $8,035.

Thus, in total, defendants submit that plaintiff's requested attorneys' fees should be reduced by at least a total of 56.1 hours for which plaintiff was charged $20,957.

**POINT III**

**THE AMOUNT OF HOURS EXPENDED BY PLAINTIFF'S COUNSEL MUST BE REDUCED IN LIGHT OF THE DEGREE OF SUCCESS PLAINTIFF OBTAINED.**

In light of the amount of damages plaintiff recovered as compared to the amount sought throughout this litigation, defendants submit that any request for attorneys' fees must be reduced accordingly.

There is no rule requiring proportionality between the amount of fees requested and the damages recovered. The Second Circuit has recently stated that:

> "[w]hile a court may, in exceptional circumstances, adjust the lodestar, it may not disregard it entirely. Especially for claims where the financial recovery is likely to be small, calculating attorneys' fees as a proportion of damages runs directly contrary to the purpose of fee-shifting statutes: assuring that civil rights claims of modest cash value can attract competent counsel. The whole purpose of fee-shifting statutes is to generate attorneys' fees that are disproportionate to the plaintiff's recovery. Thus, the district court abused its discretion when it ignored the lodestar and calculated the attorneys' fees as a proportion of the damages awarded."

26

Millea v. Metro-North R.R. Co., Nos. 10-409-cv, 10-564-cv, 2011 U.S. App. LEXIS 16354, at *10 (2d Cir. Aug. 8, 2011) (citation omitted, emphasis in original). Accord Kassim v. City of Schenectady, 415 F.3d 246, 252 (2d Cir. 2005) ("Reasoning that a rule calling for proportionality between the fee and the monetary amount involved in the litigation would effectively prevent plaintiffs from obtaining counsel in cases where deprivation of a constitutional right caused injury of low monetary value, we have repeatedly rejected the notion that a fee may be reduced merely because the fee would be disproportionate to the financial interest at stake in the litigation.").

The Second Circuit has stated, however, "that 'the most critical factor' in a district court's determination of what constitutes reasonable attorney's fees in a given case 'is the degree of success obtained' by the plaintiff." Barfield, 537 F.3d at 152 (quoting Farrar v. Hobby, 506 U.S. 103, 114 (1992)). The "degree of success" inquiry "is not limited to inquiring whether a plaintiff prevailed on individual claims." Id. (citing Kassim, 415 F.3d at 254). "Both the quantity and quality of relief obtained, as compared to what the plaintiff sought to achieve as evidenced in her complaint, are key factors in determining the degree of success achieved." Id. (quotation marks and citation omitted). "'If a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount . . . even where the plaintiff's claims were interrelated, non-frivolous, and raised in good faith.'" Id. (quoting Hensley, 461 U.S. at 436). Accordingly, "a district judge's authority to reduce the fee awarded to a prevailing plaintiff below the lodestar by reason of the plaintiff's 'partial or limited success' is not restricted either to cases of multiple discrete theories or to cases in which the plaintiff won only a nominal or technical victory." Kassim, 415 F.3d at 256.

Plaintiff appears to argue that the Second Circuit's decision in Millea, where the Court vacated as abuse of discretion a district court's award of reduced attorneys' fees based on a $612.50 dollar verdict, should apply to the instant matter, and thus, this Court should decline to reduce the amount of attorneys' fees sought; notwithstanding the fact that plaintiff was only awarded $600 dollars.  See Pl.'s Memo, p. 9.  While plaintiff correctly quotes the Second Circuit's decision in Millea, his application of same to the instant matter is incorrect.  In Millea, the Second Circuit held that "the district court impermissibly reduced its initial fee award based on an incorrect conclusion that Millea's victory was "de minimis."  Millea, 2011 U.S. App. LEXIS 16354 at *28.  In remanding the issue, the Second Circuit stated that the "$612.50 award was not de minimis; to the contrary, the award was more than 100% of the damages Millea sought on that claim."  Id.   The Second Circuit's decision was based upon the fact that the reward was "not a derisory or contemptuous rejection by the jury," and that as a result, the district court conflated a small damages award with a de minimis victory.  Id.  This distinction was subsequently acknowledged by the Honorable Shira A. Scheindlin in the matter of Davis v. City of New York, 10 Civ. 699 (SAS), 2011 U.S. Dist. LEXIS 120165, at *11-13 (S.D.N.Y. Oct. 17, 2011) where plaintiffs' counsel sought $257,334.33 in attorneys' fees, but were only awarded $56,360.25 (which included $24,145.00 in fees related to the fee application).  Thus, any reliance by plaintiff's counsel on the Second Circuit's decision in Millea for the proposition that their fees cannot be reduced even though plaintiff was awarded only $600 is incorrect.

Accordingly, the question in the instant matter is not whether the amount in attorneys' fees sought by plaintiff's counsel should be reduced because it is disproportionately higher than what plaintiff himself was awarded, but rather, whether the amount sought by plaintiff during this litigation was significantly higher than the amount he was ultimately

28

awarded.  In other words, the question that must be answered is whether the amount of attorneys'

fees sought by plaintiff's counsel is reasonable in light of the degree of success they obtained for

the plaintiff.  See Hensley, 461 U.S 114 ("'Where recovery of private damages is the purpose of .

. . civil rights litigation, a district court, in fixing fees, is obligated to give primary consideration

to the amount of damages awarded as compared to the amount sought.'") (quotation omitted).

The Second Circuit in Millea acknowledged that where the plaintiff manages to

prevail on a technicality in a mostly frivolous lawsuit, a court should award no attorneys' fees to

discourage such lawsuits.  Millea, 2011 U.S. App. LEXIS 16354 at *28 (citing Farrar, 506 U.S.

114-15 (1992).  For these purposes, a plaintiff's victory is "purely technical" or "de minimis" if

there is a substantial difference between the damages sought and the damages awarded, the legal

issue on which plaintiff prevails is relatively unimportant, and the litigation serves no discernible

public purpose.  Farrar, 506 U.S. at 121-22 (1992).

Here, the amount plaintiff requested from the jury ($22,000) was approximately

36 times more than the amount they decided to award him.  Thus, the circumstances here stand

in total contrast to those before the Second Circuit in Millea – here, the jury's award of $600 for

17 hours in custody, after plaintiff's counsel explicitly asked the jury to award plaintiff $22,000,

does in fact represent "a derisory or contemptuous rejection by the jury."  Millea, 2011 U.S.

App. LEXIS 16354 at *28.

Additionally, plaintiff's complaint alleged claims of false arrest, excessive force,

failure to intervene, First Amendment retaliation, denial of a constitutional right to fair trial and

municipal liability, all under Federal law, as well as claims of assault, battery and false

arrest/false imprisonment under State law.  However, plaintiff was only successful as to his

claims of false arrest and false imprisonment under state law as against two of the four defendants.

Accordingly, the degree of success plaintiff obtained is minimal bordering on nominal and as such, a request by plaintiff's counsel for an award of attorneys' fees in the amount of $124,149 dollars is absurd and must be reduced.  See Farrar, 506 U.S. 114-15 (1992). In Adams v. Rivera, 13 F.Supp. 2d 550 (S.D.N.Y. 1998), the Honorable Jed S. Rakoff awarded no attorney's fees where plaintiff received only $1,080 in compensatory damages out of an asked-for $1.5 million.  Adams, 13 F.Supp. 2d at 553.  In reaching his decision, Judge Rakoff declared of the plaintiff:

> "He prevailed against only two of five originally named defendants, and on only one of his four claims.  He sought no material non-monetary relief, see, e.g., LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 759 (2d Cir. 1998), established no legal principle, see, e.g., Cabrera, 24 F.3d at 393, and no "new rule of liability," see, e.g., Red Cloud-Owen, 958 F. Supp. at 96 (citation and internal quotation marks omitted), and accomplished no readily discernible public purpose.  Indeed, the jury effectively chose not to send a message to the law enforcement community when it declined to award punitive damages, see, e.g., Schwenk, 1998 WL 259907, at *3, and awarded the most modest compensatory damages.  In short, this case accomplished essentially nothing other than consuming substantial time, energy, and resources of this Court and the judicial process."

Id.  Similarly, in Schlant v. Victor Belata Belting Co., 94-CV-0915E(Sc), 2001 U.S. Dist. LEXIS 16539 (W.D.N.Y. Oct. 2, 2001), plaintiff's request for $46,493.50 in attorneys' fees was reduced to only $277.45 based on the fact that plaintiff only recovered $832.34 out of an initial request of $2.7 million (the award for attorneys' fees was calculated as a third of plaintiff's recovery).

The only difference between the results in Adams and Schlant as compared to the result here is that plaintiff was awarded punitive damages against one defendant in the amount of $500 dollars.  Defendants note that Judge Rakoff does appear to distinguish the circumstances

presented in <u>Adams</u> from those presented in <u>Lunday v. City of Albany</u>, 42 F.3d 131 (2d Cir. 1994) on the grounds that in <u>Lundlay</u>, punitive damages were awarded.  <u>Id.</u> at p. 11, ft. 6. However, in <u>Lundlay</u>, the Second Circuit did not explicitly state that because punitive damages were awarded the requested attorneys' fees should not be reduced.  <u>Lundlay</u>, 42 F.3d at 134-135. To the contrary, the Second Circuit found that because plaintiff was awarded $35,000 dollars, the relief transcended the mere "technical victory" that the Court in <u>Farrar</u> ruled merited no award of fees.  <u>Id.</u> (citation omitted).  Notwithstanding, even if the Court were to decline to award plaintiff no attorneys' fees at all in the manner Judge Rakoff did in <u>Adams</u>, or only a third of the award recovered by the plaintiff as the Court did in <u>Schlant</u>, the extremely modest award of punitive damages here at best should enable plaintiff's counsel to recover only a small fraction of the fees actually sought.

  To the extent plaintiff may attempt to argue that his limited victory as against defendants Zhen and Kessler in and of itself was a success, plaintiff has set forth no supportive evidence in that regard.  Curiously, while plaintiff's counsel have provided declarations from members of the plaintiff's bar, all of whom, as noted above, stand to personally benefit from the Court's decision in favor of plaintiff's counsel in this matter, they have failed to provide any affidavit or declaration from their client indicating that he was satisfied with the award he received.  Notwithstanding, even if plaintiff's counsel were somehow able to provide such evidence, it would have no bearing on the amount of attorneys' fees to which they are entitled. <u>See</u> <u>Schlant</u>, 94-CV-0915E(Sc), 2001 U.S. Dist. LEXIS 16539 at *12 (The moral satisfaction of knowing that a jury concluded that defendant had discriminated against her does not entitle plaintiff to attorney fees) (citing <u>Hewitt v. Helms</u>, 482 U.S. 755, 761 (U.S. 1987) (court could

have found that defendant had violated plaintiff's rights but was nonetheless entitled to qualified immunity).

From a policy perspective, plaintiff's counsel argues in their motion for attorneys' fees that "Because civil rights litigation is risky, defendants often win at trial, and contingency fee arrangements often mean that plaintiffs' attorneys absorb expenses from unsuccessful cases, relatively few members of the bar are willing to regularly undertake litigation of constitutional torts." See Pl.'s Memo, pp. 7-8. Plaintiff's counsel seems to argue that cases such as these are rarely brought and that as a result, their request for attorneys' fees should not be reduced as it would discourage future cases of this kind being filed. This argument is not only clearly misplaced, but defendants are confident that the Court is well aware of the numerous § 1983 cases against the City of New York and its law enforcement officers currently on dockets in this district. Defendants acknowledge that the public interest in encouraging injured parties to vindicate their civil rights is such that attorneys' fees should sometimes be awarded to prevailing plaintiffs even when damages are very modest. See Adams, 13 F. Supp. 2d 553 (citation omitted). However, as Judge Rakoff opined in Adams, there is also a public interest in preventing dubious or trivial claims from flooding the federal courts. Id.

Accordingly, in light of the fact that plaintiff was only awarded $600 dollars in damages, yet his attorneys are seeking $124,149 dollars in fees, defendants submit that a balance must be struck whereby plaintiff's counsel are prevented from obtaining a substantial windfall. As plaintiff's counsel notes in their moving papers, they proceeded through discovery and trial in a similar matter before ultimately losing and only were forced to expend $10,000 dollars. Thus, to award plaintiff's counsel nearly $114,149 dollars after expenses when they only obtained a $600 dollar verdict for their client would surely go against the public interest in preventing

32

dubious or trivial claims from being filed as the merit of the case would no longer have any impact on the profitability of bringing a § 1983 action.

In sum, defendants respectfully submit that the amount of reasonable attorneys' fees awarded plaintiff's counsel must be reduced further in light of the minimal degree of success obtained by the plaintiff in this action.

### POINT IV

### FEES IN CONNECTION WITH THE INSTANT APPLICATION SHOULD NOT BE AWARDED.

Plaintiff seeks to recover approximately $14,617.50 for fees incurred in connection with the instant application. See Pl.'s Memo, p. 21. Defendants submit that such a request should be denied in its entirety, or in the alternative, reduced significantly. The district court has "great leeway" in determining whether such fees should be awarded. Gagne v. Maher, 594 F.3d 336, 344 (2d Cir. 1979). The Second Circuit has stated that, "if the fee claims are exorbitant or the time devoted to presenting them is unnecessarily high, the judge may refuse further compensation or grant it sparingly." Valley Disposal Inc. v. Central Vermont Solid Waste Mgmt. Dist., 71 F.3d 1053, 1059 (2d Cir. 1995) (citing Gagne, 594 F.2d 336 (2d Cir. 1979), aff'd on other grounds, 448 U.S. 122 (1980)).

As explained in detail in Points I - III, supra, plaintiff's fee request was excessive in terms of requested hourly rate, the amount of time spent litigating this matter and in light of the minimal degree of success obtained. Moreover, plaintiff's request for $14,617.50 in fees associated with his having to make the present application is exorbitant. As set forth in Point I, supra, the hourly rates of both Mr. Saleem and Mr. Harvis are clearly excessive in light of the applicable case law in this circuit. Moreover, plaintiff's counsel spent more on their fee

application – 37.1 hours – than they did participating in the depositions of all parties in this matter which only took 15.3 hours. Here, similar to defendants' argument regarding plaintiff's frivolous discovery dispute before Judge Cogan, rewarding plaintiff's counsel the amount they seek would create a perverse incentive. Specifically, plaintiff's counsel requested an amount in attorneys' fees substantially higher than applicable case law in this circuit dictates they deserve. As a result, defendants had no choice but to oppose plaintiff's application as plaintiff's counsel requested an exorbitant amount without any colorable basis for doing so. Thus, should plaintiff's counsel then be awarded fees for the instant application it would simply encourage counsel in the future to request an amount they know the other side will not pay solely to force motion practice and increase the total amount of fees they obtain as a result of the litigation.

Even if the Court is inclined to award plaintiff fees for the time spent drafting the present motion, defendants assert that plaintiff's requested amount is far too high in light of the fact that, as noted in Point I, supra, the hourly rates they have chosen to bill at are not commensurate to their respective experience. As a result, a reduction which accurately reflects an appropriate hourly rate for both Mr. Saleem and Mr. Harvis is appropriate should the Court decide that fees for the instant application are to be awarded.

As such, defendants assert that plaintiff's request for fees associated with making the instant motion should be denied in its entirety, or in the alternative, significantly reduced.

## CONCLUSION

Based on the arguments set forth herein, defendants submit that at least 56.1 hours expended by plaintiff's counsel was unreasonable and should be excluded.

Additionally, the requested hourly rates for both Mr. Saleem and Mr. Harvis are unreasonable and must be reduced. Mr. Saleem's hourly rate should be reduced to $300 per hour

or at most, $325 per hour.  Mr. Harvis' hourly rate should be reduced to $225 per hour or at most, $250 per hour.

Lastly, defendants submit that the Court should further reduce the amount of attorneys' fees which remain after the appropriate reductions by a percentage that would accurately reflect the minimal amount of success plaintiff obtained.  See Point III, supra.  Courts in this circuit consistently have reduced fee claims from forty percent (40%) to ninety percent (90%) to account for a limited degree of success, such as that reflected here.  See Barfield, 537 F.3d at 152-53 (affirming total reduction of eighty-five percent, including reduction of fifty percent to account for limited success); Kirsch, 148 F.3d at 172-73 (affirming reduction of fifty percent for limited success); Separ v. Nassau County Dept. of Social Services, 327 F. Supp. 2d 187, 191-92 (E.D.N.Y. 2004) (fee reduced by forty percent where plaintiff "failed to submit . . . evidence" to support certain claims and prevailed on some, but not all, of the "factually distinguishable" claims submitted to the jury); Hine v. Mineta, 253 F. Supp. 2d 464, 467 (E.D.N.Y. 2003) (fee reduced by sixty percent where "a significant part of the trial was devoted to testimony on two causes of action and issues related to damages, which the jury decided in favor of the defendant"); Betancourt v. Giuliani, 325 F. Supp. 2d 330, 333-34 (S.D.N.Y. 2004) (approving reduction of ninety percent to both fees and costs where one individual plaintiff recovered $15,000 in settlement, finding that degree of success was "relatively minimal"); Baird v. Boies, Schiller & Flexner, LLP, 219 F. Supp. 2d 510, 524-25 (S.D.N.Y. 2002) (fees reduced by sixty percent where "plaintiffs achieved remarkably little in comparison to what they sought"); Marshall v. New York Div. of State Police, 31 F. Supp. 2d 100, 107-8 (N.D.N.Y 1998) (reducing fee request by fifty percent where plaintiff withdrew damages claims for front pay and

emotional distress, four of five defendants were dismissed prior to trial, and where plaintiff recovered "very limited damages").

Thus, defendants submit that the amount of plaintiff's attorneys fees after the appropriate reductions which factor in a reasonable hourly rate for plaintiff's counsel and which excludes unnecessary hours billed should be further reduced by 80% to account for plaintiff's limited amount of success.

Accordingly, for the reasons set forth herein, it is requested that plaintiff's counsels' fees be reduced in the following manner:

| Deductions | Reason | | Amount Deducted |
|---|---|---|---|
| 56.1 hours | Unreasonable and duplicative billing | | $20,957 |
| $125 per hour deduction for AS | AS hourly rate from $425 to $300 x 146.1 hours | | $18,262.50 |
| $150 per hour deduction for GPH | GPH hourly rate from $375 to $225 x 64.2 hours | | $9,630 |
| $67.50 per hour deduction for AS | AS travel time rate from $212.50 to $150 x 10 hours | | $625 |
| $65 per hour deduction for GPH | GPH travel time rate from $187.50 to $112.50 x 7 hours | | $525 |
| $14,617.50 | Fees for the instant motion | | $14,617.50 |
| | | Total Fees after appropriate reductions | $59,532 |
| 80% | Limited success deduction | | $47,625.60 |
| | | Total Fees after all reductions | $11,906.40 |

For the foregoing reasons, defendants respectfully request that the Court deny plaintiff's motion for attorneys fees and costs and for such other and further relief as the Court deems just and proper.

Dated:     New York, New York
            November 4, 2011

                              MICHAEL A. CARDOZO
                              Corporation Counsel of the City of New York
                              Attorney for Defendants
                              100 Church Street
                              New York, New York 10007
                              (212) 788-0988

By:

                              Brian Francolla
                              Assistant Corporation Counsel
                              Special Federal Litigation

cc:     Afsaan Saleem, Esq. (by ECF)
        Gabriel Harvis, Esq.
        Harvis & Saleem LLP
        305 Broadway, 14th Floor
        New York, New York 10007