UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - -X

MALIK FRYAR,

                              Plaintiff,

            - against -                    REPORT AND
                                           RECOMMENDATIONS
CITY OF NEW YORK, et al.,
                                           CV 2010-5879 (TLM)(MDG)
                              Defendants.

- - - - - - - - - - - - - - - - - - -X

GO, United States Magistrate Judge:

    Malik Fryar brought this action against the City of New York and police officers Robert Zhen, Matthew Kokoruda, Tyler Kalman and Peter Kessler ("defendants") for violations of his civil rights in connection with his arrest on November 7, 2010.  The Honorable Tucker L. Melançon[1] presided over a jury trial beginning September 19, 2011, which resulted in a verdict on September 22, 2011 in favor of plaintiff against Officers Zhen and Kessler.  Judge Melançon then ordered that the two officers and the City of New York pay reasonable attorneys' fees pursuant to 42 U.S.C. § 1988(b).  After the parties advised Judge Melançon that they could not amicably resolve the issues of attorneys' fees, he referred the matter to me for report and recommendation.


                        BACKGROUND

    Plaintiff commenced this action on December 17, 2010.  In his complaint, plaintiff alleged that as he was walking with two friends

_____

    [1]   This case was originally assigned to the Honorable Brian M. Cogan and was reassigned to Visiting Judge Melançon on August 15, 2011.  See Docket Entry dated Aug. 15, 2011.

in the early morning of November 7, 2010, he saw his cousin in the backseat of a police car and gave him a peace sign. Sec. Am. Compl. (ct. doc. 14) ¶¶ 16-18.  One of the defendant police officers reacted by calling out and approaching him.  Id. ¶¶ 19, 21.  Although plaintiff put his hands up and began to kneel on the ground, two of the officers slammed him on the ground, punched him in the face and then arrested him.  Id. ¶¶ 21-22, 23-28.  Plaintiff spent 24 hours in custody and the criminal charges against him were later adjourned in contemplation of dismissal.  Id. ¶¶ 29-30.

Discovery proceeded uneventfully, except for one discovery dispute arising from plaintiff's refusal to produce authorizations for release of his prior arrest records and to provide accurate contact information for two non-party witnesses.  See Letter from Brian Francolla, Esq. (ct. doc. 12) dated May 3, 2011.  Plaintiff had identified the witnesses, his cousin and a close friend, in his initial disclosures.  Id.  Judge Cogan granted defendants' motion to compel on both issues and initially sanctioned plaintiff $200 for "engaging in bad faith discovery practices."  Order (ct. doc. 15) dated May 4, 2011.  Upon plaintiff's motion for reconsideration, Judge Cogan vacated the sanctions, but reiterated that counsel "had no colorable basis for the positions he took."  Electronic Order dated May 11, 2011.  Discovery closed shortly thereafter.

The parties briefed motions in limine on June 6, 2011, which Judge Cogan decided at a conference held on June 17, 2011.  Jury selection took place on September 12, 2011, followed by trial, which lasted for three days.

In his complaint, plaintiff asserted federal claims against the individual defendants for deprivation of civil rights pursuant to 42 U.S.C. § 1983, id. ¶ 32, false arrest, id. ¶ 35, use of unreasonable force, id. ¶ 38, failure to intervene, id. ¶ 41, First Amendment retaliation, id. ¶ 45, and denial of a fair trial, id. ¶ 51, as well as state law claims for assault, battery, id. ¶ 60, false arrest and false imprisonment.  Id. ¶ 64.  He also asserted a claim against the City for liability under Monell.  Id. ¶ 55.  Of these, the federal false arrest, excessive force, failure to intervene and state false imprisonment, assault and battery claims were submitted to the jury at the close of trial.  See Jury Verdict Form (ct. doc. 41).  The jury awarded plaintiff $100 in compensatory damages for his federal false arrest and state false imprisonment claims against Officers Zhen and Kessler and $500 in punitive damages against Officer Zhen. Id.

The parties resolved the amount of taxable costs by stipulation and agreed that defendants would pay plaintiff's costs of $3,876.31. See Stip. of Settlement (ct. doc. 44) at 2.  However, they did not reach an agreement on fees and the instant application followed.

Plaintiff requests a total of $136,170.62 in fees, calculated according to the lodestar method.[2]  See Pl.'s Fee Reply (ct. doc. 52) at 16.  Plaintiff claims fees based on 183.9 hours of work by Afsaan

---

[2] Plaintiff originally requested fees and expenses of $125,234.95, see Pl.'s Fee Mem. (ct. doc. 48) at 23, but in his reply in support of the motion, he requested an additional $10,925.00 in fees and $10.67 in expenses for work on the fee motion and reply.  See Pl.'s Fee Reply (ct. doc. 52) at 17; Saleem Fee Reply Decl. (ct. doc. 53), Ex. G at 2.

Saleem, Esq. billed at a rate of $425 per hour, 140.7 hours of work
by Gabriel Harvis, Esq. billed at $375 per hour, travel time of 10
hours by Mr. Saleem and 7 hours by Mr. Harvis at 50% of their hourly
rates, 6.3 hours of paralegal work performed by counsel billed at $80
per hour and $1,096.62 in costs and expenses.  See Pl.'s Fee Reply at
16-17.  They claim their requested hourly rates are reasonable in
light of their litigation and civil rights experience, much of which
they acquired from working in the New York City Law Department and
which included significant involvement in major cases.  See Pl.'s Fee
Mem. at 11-14, 16 (on Mr. Saleem), 17-19 (on Mr. Harvis).  They also
argue that their rates are justified because of the risk inherent in
representing plaintiffs in civil rights disputes on a contingency
basis, id. at 15; and that their rates are comparable to rates paid
to counsel by the City in prior disputes, id. at 16, the average
attorney rates, id. at 16-17, 19, and awards granted to attorneys in
similar cases.  Id. at 17, 19.  They also provide affidavits from
civil rights attorneys affirming both the quality of counsel's
litigation experience and the reasonableness of their requested
rates.  See Saleem Fee Decl. (ct. doc. 46) Exs. C, D, E.  Counsel
also note that they billed at reduced rates for paralegal activity.
Id. at 20.  They defend their time entries as specific and detailed,
id. at 20-21, and note that they attempted several times to settle
with defendants, who they allege refused to negotiate.  Id. at 21.

Defendants contest this application on several grounds.  First,
they argue that the requested rates for plaintiff's counsel are
unreasonable in light of counsel's experience, particularly disputing

-4-

the roles of Mr. Saleem and Mr. Harvis in cases that they worked on when in the New York City Law Department, and the usefulness of the attorney affidavits they provided. See Defs.' Fee Resp. (ct. doc. 50) at 7-11, 16-20. Defendants also contend that plaintiff's requested hours are "excessive, redundant and otherwise unnecessary," particularly the hours expended in the discovery dispute previously described. Id. at 21. Although acknowledging that not all unsuccessful motions warrant a reduction in fees, defendants contend plaintiff should not be compensated for engaging in what Judge Cogan initially described as "bad faith discovery practices." Id. at 21-22; Order dated May 4, 2011. Defendants also argue that some of the work performed by both attorneys was duplicative, such as communications between attorneys, review of documents, discussions with a store manager regarding video surveillance and certain aspects of trial preparation. See Defs.' Fee Resp. at 25-26.

Defendants further assert that any fee award must be reduced to reflect the fact that plaintiff did not succeed on several claims and received a relatively small damages award. Id. at 29-31. Finally, defendants ask that the Court reduce significantly or deny altogether plaintiff's request for fees on the fee application because the number of hours billed is "exorbitant." Id. at 33.

In reply, plaintiff argues that the lodestar rate is presumptively reasonable and should not be disturbed absent extraordinary circumstances. See Pl.'s Fee Reply at 2-3. He contends, inter alia, that the quality of representation was excellent and contributed directly to plaintiff's success at trial,

-5-

id. at 3, 7, 8; Judge Cogan reconsidered and vacated the monetary
sanctions, id. at 8-9; counsel billed very little for internal
communications; and all items that were billed by both attorneys were
crucial tasks.  Id. at 10.  Counsel also defend their
characterizations of their prior trial experience, id. at 12-15, and
proffer an evaluation of Mr. Saleem from one of his supervisors at
the NYC Law Department.  Saleem Reply Decl., Ex. B.  They also attach
an affidavit from Mr. Fryar in which he attests to his satisfaction
with his attorneys and his jury award.  Id., Ex. D.  Finally, they
assert that the number of hours billed for the fee motion is
reasonable in light of defendants' refusal to settle on attorneys'
fees.  Pl.'s Fee Reply at 15-16.

### DISCUSSION

The standard method for determining the amount of reasonable
attorneys' fees is the lodestar method, which is based on "the number
of hours reasonably expended on the litigation multiplied by a
reasonable hourly rate."  Hensley v. Eckerhart, 461 U.S. 424, 433
(1983); Arbor Hill Concerned Citizens Neighborhood Ass'n, 522 F.3d
182, 184, 188-90 (2d Cir. 2008).  Both the Second Circuit and the
Supreme Court have held that the lodestar figure creates a
"presumptively reasonable fee," though it is not "conclusive in all
circumstances."  Millea v. Metro-N. R.R. Co., 658 F.3d 154, 166 (2d
Cir. 2011) (citing Perdue v. Kenny A. ex rel. Winn, 130 S.Ct. 1662,
1673 (2010)).  However, "that presumption may be overcome in those
rare circumstances in which the lodestar does not adequately take

-6-

into account a factor that may properly be considered in determining a reasonable fee." Perdue, 130 S.Ct. at 1673.

I.   Reasonably Expended Hours

In reviewing a fee application, the court "must examine the particular hours expended by counsel" with a view to "the value of the work product of the particular expenditures to the client's case." DiFilippo v. Morizio, 759 F.2d 231, 235 (2d Cir. 1985); see also Adorno v. Port Auth. of New York and New Jersey, 685 F.Supp.2d 507, 515 (S.D.N.Y. 2010) (analyzing the merits, success and ultimate contribution to litigant's case of various billing entries); Wells Fargo Bank N.A. v. Sinnott, 2010 WL 297830, at *9 (D. Vt. Jan. 19, 2010) (losing party "is required to pay only a reasonable amount of attorney fees, not the actual amount incurred by the prevailing party who makes no or a minimal effort to contain costs").

If any expenditure of time was unreasonable, the Court should exclude these hours from the calculation. See Hensley, 461 U.S. at 434; Lunday v. City of Albany, 42 F.3d 131, 133 (2d Cir. 1994). The Court should thus exclude "excessive, redundant or otherwise unnecessary hours, as well as hours dedicated to severable unsuccessful claims." Quaratino v. Tiffany & Co., 166 F.3d 422, 425 (2d Cir. 1999). A party seeking attorneys' fees bears the burden of supporting its claim of hours expended by accurate, detailed and contemporaneous time records. New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1147-48 (2d Cir. 1983);

see also Saunders v. City of New York, 2009 WL 4729948, *5 (S.D.N.Y.
Dec. 9, 2009).

Additionally, this Court may also take into consideration the
"novelty and complexity" of a case in determining the reasonableness
of the number of hours expended by counsel. See Perdue, 130 S.Ct. at
1673; Millea, 658 F.3d at 167 (district court should have considered
novelty and complexity of case by adjusting the number of billable
hours, not final lodestar fee). In cases where a plaintiff succeeds
on certain claims but fails to recover for others, a reduction for
time spent on unsuccessful claims is appropriate only where the
unsuccessful claims are "wholly unrelated" to the successful claims.
See Lunday, 42 F.3d at 134. Although it remains unclear to what
extent a court in this Circuit may consider the degree of success of
inextricably intertwined successful and unsuccessful claims,[3] it is
clear that "plaintiff[] may receive fees for all hours reasonably
spent litigating a case even if they do not prevail on every claim of
legal theory." Hensley, 461 U.S. at 441.

Plaintiff separates the hours expended by counsel into four
categories: 260.6 hours of time for "litigation" work performed
through the end of trial, 64 hours of time for the fee motion; 17
hours of travel time and 6.3 hours of time for paralegal work. Each
of these categories are discussed below.

A. Litigation Work

Plaintiff seeks fees for 157.3 hours of work expended by Mr.
Saleem and 103.3 hours expended by Mr. Harvis through the conclusion

_____

[3]    See discussion infra, at 23-27.

-8-

of the trial.  Although many of the hours billed by counsel are reasonable, I find, after reviewing the time records, that some of the claimed time is excessive or otherwise not compensable.

Most notably, the time claimed by plaintiff for work on defendants' motion to compel was unreasonable.  Plaintiff not only lost that motion, but his attorneys were initially sanctioned by Judge Cogan for "engaging in bad faith discovery practices" for refusing to provide the discovery sought.  Ct. doc. 15 at 1.  Although Judge Cogan later vacated the sanction, he reiterated that counsel "had no colorable basis" for their position.  See Electronic Order dated May 11, 2011.

While counsel may, as a general matter, be compensated for motions that were ultimately unsuccessful, they may not recover fees for "motions that were unreasonable or had little chance of success."  Rozell v. Ross-Holst, 576 F.Supp.2d 527, 538 (S.D.N.Y. 2008).  This is because "[r]easonable paying clients may reject bills for time spent on entirely fruitless strategies while at the same time paying their lawyers for advancing plausible though ultimately unsuccessful arguments."  Id.; see also Adorno, 685 F.Supp.2d at 515 (reducing plaintiff's hours in light of, inter alia, discovery disputes regarding plaintiff's requests that "simply were not reasonable" and were "ill-advised").

Since Judge Cogan found that plaintiff's refusal to provide the discovery at issue was unreasonable, plaintiff is not entitled to compensation for time spent on drafting the joint letter setting forth the discovery dispute and the even greater time spent to seek

-9-

reconsideration.  Therefore I recommend that the Court exclude from
the fee award the number of hours spent by counsel on the motion,
consisting of 12.7 hours of work by Mr. Saleem, 20.3 hours by Mr.
Harvis and .5 hours of time for work performed at a paralegal rate.[4]

I find much of the remaining time spent by counsel for
litigation work to be reasonably expended.  Mr. Saleem handled most
pretrial matters.  Contrary to defendants' objections that Mr. Harvis
performed largely duplicative work, I find that much of the time
billed by Mr. Harvis was properly spent during critical stages of the
litigation, particularly after the conclusion of discovery in
drafting pretrial submissions, and in preparing for and actually
participating at trial.

However, I nevertheless find that some entries reflect excessive
or duplicative hours.  For example, Mr. Harvis's time speaking with
the KeyFood manager on January 18, 2011 was apparently identical to
work performed by Mr. Saleem that day.  Saleem Decl., Ex. B ("Billing
Invoice") at 1-2.  More significantly, a number of entries reflect
conferences between counsel.  Id. at 7, 10, 11 12-13, 15 (indicating
conferences on 5/17/2011, 6/17/2011, 9/7/2011, 9/8/2011 and 9/17/2011
billed by both attorneys).  Courts generally consider time spent on
conferences between counsel to be excessive.  See Dotson v. City of
Syracuse, 2011 WL 817499, at *25 (N.D.N.Y. Mar. 2, 2011); Rozell, 576
F.Supp.2d at 541.

---

[4]   Defendants claim that counsel spent a total of 34.1 hours, a
slightly higher figure.  Defs.' Mem. at 21-22.  The hours that
this Court excluded are reflected in Appendix A.

Additionally, both counsel billed for 7.5 hours spent in the courtroom on September 22, 2011, the last day of trial, even though the transcript clearly reflects that the jury spent the day in deliberations.  See Billing Invoice at 16; Trial Tr. dated Sept. 22, 2011.  Although some discussions took place between counsel and the Court that day, it was plainly unnecessary for both counsel to be present the entire day, particularly given the proximity of their offices in lower Manhattan to the courthouse in Brooklyn.  Likewise, Mr. Harvis billed for the same amount of time as Mr. Saleem for preparing and attending a pretrial conference on May 25, 2011, even though Mr. Harvis apparently had not spent any time prior to the conference working on issues that were addressed at the conference. In a similar vein, both attorneys have many identical entries for trial preparation time.  Because the descriptions are very general, the Court cannot determine whether some of this work was duplicative or excessive.

Last, this Court notes although counsel did appropriately bill certain time at a paralegal rate given the nature of the work performed, counsel neglected to do so for some other similar work that could have been performed by a paralegal.  For example, Mr. Saleem billed at half his regular rate for each time that he traveled to the court to file the complaint and the amended complaint and to obtain amended summonses, tasks that should have been billed at a paralegal rate.[5]  Id. at 1, 3 (12/17/10, 2/14/11, 2/16/11).  He also

_____

[5]     The Court treats this improper billing rate simply as further evidence that an adjustment on the total number of hours billed by counsel should be made for litigation and will not

-11-

billed time at his regular rate for preparing summonses, subpoenas and notices of deposition, id. at 1, 3, 4 (12/17/10, 2/16/11, 4/20/110), as well as for travel to obtain exhibit tabs and bench book binders.  Id. at 14 (9/16/11).

Instead of subtracting time for individual entries, I recommend that the Court simply make an across-the-board percentage reduction for redundant or otherwise unnecessary hours, in accordance with common practice in the Second Circuit.  See Kirsch v. Fleet Street, Ltd., 148 F.3d 149, 173 (2d Cir. 1998) (court should "deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application"); Concrete Flotation Sys., Inc. v. Tadco Constr. Corp., 2010 WL 2539661, at *1 (E.D.N.Y. June 17, 2010) (noting that courts in this circuit commonly reduce hours in fee applications and citing cases); Adorno, 685 F.Supp.2d at 515 (reducing hours where "many of the hours were excessive and unnecessary); Saunders, 2009 WL 4729948, at *5 (citing cases); Rozell, 576 F.Supp.2d at 241 (same).

Notwithstanding the instances of improper billing discussed above, I find that the remainder of counsel's billing entries generally reflect hours reasonably expended.  Thus, based on my concerns discussed and the straightforward nature of this case, I recommend that the court simply make an across-the board reduction of the hours billed for litigation work by 10% to account for the instances of improper billing. After deducting time expended on the ill-advised discovery dispute (12.7 hours for Mr. Saleem and 20.3

recommend reallocating the time to paralegal time.

hours for Mr. Harvis) and taking a 10% reduction of the remaining hours spent on litigation work, I recommend that Mr. Saleem be compensated for 130.1 hours of work and Mr. Harvis for 74.7 hours of work in the "litigation" phase of this case.

   B. <u>Fee Motion</u>

   In addition to the reduction for excessive "litigation" hours, I recommend a reduction for the number of hours claimed for work on the fee application.  Counsel spent 37.1 hours on the fee motion and 26.9 hours on the reply papers, for a total of 64 hours.  While it is undisputed that a prevailing party may recover for time expended in connection with a fee request, courts in this district have usually concluded that 10-25 hours is a reasonable range for "fee applications in routine cases" and awarded more hours for more complex cases.  <u>Brown v. Starrett City Assocs.</u>, 2011 WL 5118438, at *6 (E.D.N.Y. Oct. 27, 2011) (subtracting 7 hours of compensable hours from counsel's request for 29 hours); <u>Murray v. Mills</u>, 354 F.Supp.2d 231, 241 (E.D.N.Y. 2005) (finding that a reasonable amount of hours for fee application is 15, reduced from counsel's request for 150 hours, and noting that 30 hours was awarded in "a more complex case that involved a six-day jury trial, eight depositions, and 17,000 pages of documents") (citing <u>Fink v. City of New York</u>, 154 F.Supp.2d 403, 412 (E.D.N.Y. 2001)); <u>White v. White Rose Food</u>, 86 F.Supp.2d 77 (E.D.N.Y. 2000) (reducing compensable hours from 60 to 15); <u>Savino v. Computer Credit, Inc.</u>, 71 F.Supp.2d 173, 178-79 (E.D.N.Y. 1999) (reducing award for second fee application from requested 40 hours to 5).  Also, given counsel's claimed experience in litigating Section

1983 cases, there is no reason why so much time was required for what should have been essentially a ministerial task.

The time billed on the present motion is inflated in part by time spent by counsel gathering affidavits and various charts.  As discussed below in more detail, this evidence is of minimal value.[6]

Thus I recommend that the Court reduce the hours sought with respect to the fee application to 25 hours, to be pro-rated between Mr. Harvis and Mr. Saleem in proportion to the hours claimed by each.  In other words, I recommend that fees should be awarded for 14.6 hours of work by Mr. Harvis and 10.4 hours of work by Mr. Saleem expended in connection with the fee application.

C.    Travel Time and Paralegal Hours

Defendants have not objected to plaintiff's requested hours for travel time, which I find on the whole to be reasonable.  Therefore, I recommend that Mr. Saleem be compensated for 10 hours of travel time and Mr. Harvis for 7 hours of travel time, both billed at half their regular rate.  See Pl's Fee Reply at 16.  Similarly, I recommend that counsel be compensated for 5.8 hours of paralegal work, which, as noted, reflects a reduction of 0.5 hours for time spent on the discovery motion.  Id.

D.    Summary of Hours

In sum, I recommend that the fee award be based on (1) 130.1 hours of "litigation" work and 10.4 hours of fee work by Mr. Saleem for a total of 140.5 hours at his compensable rate, as well as 10 hours of travel time at half his rate; (2) 74.7 hours of "litigation"

---

[6]    Infra, at 20-22.

-14-

work and 14.6 hours of fee work by Mr. Harvis, for a total of 89.3 hours at his full rate and 7 hours of travel time at half his rate; and (3) 5.8 hours of paralegal work.

II.  Reasonable Hourly Rate

A reasonable hourly rate is "the rate a paying client would be willing to pay," bearing "in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." Arbor Hill, 522 F.3d at 190; see also Simmons v. N.Y.C. Transit Auth., 575 F.3d 170, 174 (2d Cir. 2009).  The rates awarded should reflect counsel's experience as well as "the nature of representation and type of work involved in a case." See Arbor Hill, 522 F.3d at 184.  Such a determination should be based on "rates prevailing in the community for similar services of lawyers of reasonably comparable skill, experience, and reputation." Cruz v. Local Union No. 3 of IBEW, 34 F.3d 1148, 1159 (2d Cir. 1994) (citing Blum v. Stenson, 465 U.S. 886, 894 (1984)).  A court may determine prevailing market rates based on evidence presented or on a judge's own knowledge of hourly rates charged in the community.  McDonald v. Pension Plan of the NYSA-ILA Pension Trust Fund, 450 F.3d 91, 96-97 (2d Cir. 2006); Chambless v. Masters, Mates & Pilots Pension Plan, 885 F.2d 1053, 1059 (2d Cir. 1989).  The "community" is generally considered the district where the district court sits. See Arbor Hill, 522 F.3d at 190; Siracuse v. Program for the Development of Human Potential, 2012 WL 1624291, at *26-*27 (E.D.N.Y. Apr. 30, 2012) (stating that "this Circuit continues to endorse the forum rule" and

-15-

awarding attorneys' fees at a reasonable rate for the Eastern District even though plaintiff lived, and her counsel worked in offices located, in Manhattan).  The "range of 'reasonable' attorney fee rates varies depending on the type of case, the nature of the litigation, the size of the firm, and the expertise of its attorneys." Siracuse, 2012 WL 1624291, at *30; Hugee v. Kimso Apartments, LLC, __ F. Supp.2d __, 2012 WL 1096086, at *11-*13 (E.D.N.Y. 2012) (size of the firm a consideration).

The range of rates that courts in this district have determined to be reasonable in civil rights cases has varied from judge to judge.  On the lower end, courts have approved partner rates of between $300 and $400 per hour.  E.g., Colon v. City of New York, 2012 WL 691544, at *21 (E.D.N.Y. Feb. 9, 2012); Gutman v. Klein, 2009 WL 3296072, at *2 (E.D.N.Y. Oct. 9, 2009) (approving rates of $300-$400 for partners, $200-$300 for senior associates and $100-$200 for junior associates); see also Konits v. Karahalis, 409 Fed. App'x 418, 422-23 (2d Cir. 2011) (affirming holding that the prevailing rates for experienced attorneys in the Eastern District of New York range from approximately $300 to $400 per hour).  Other courts have recognized slightly higher ranges in this district of "$300-$450 per hour for partners, $200-$300 per hour for senior associates, and $100-$200 per hour for junior associates." Hugee, 2012 WL 1096086, at *11-*13 (citations omitted) (citing cases).  Another court has recently observed that "reasonable fees in this district vary from $200 to $375 per hour for partners and $100 to $295 per hour for associates" and $70 to $80 for paralegals or legal assistants.

-16-

Penberg v. HealthBridge Mgmt., 2011 WL 1100103, at *6–*7 (E.D.N.Y. March 22, 2011).

Setting aside the variation in the range of rates, the actual hourly rate that many courts have awarded partners and solo practitioners in civil rights cases have most often been in the $300 per hour range. See, e.g., Brown, 2011 WL 5118438, at *5 (awarding $300 per hour to counsel with 12 years' litigation experience, 7 of those in civil rights, in Section 1983 civil rights case that "raise[d] at least one unusual issue"); Rodriguez v. Queens Convenience Deli Corp., 2011 WL 4962397, at *6 (E.D.N.Y. Oct. 18, 2011) (awarding $300 per hour to solo practitioner with nine years of experience); GuideOne Specialty Mut. Ins. Co. v. Congregation Adas Yereim, 2009 WL 3241757, at *3–*4 (E.D.N.Y. Sept. 30, 2009) (awarding $275 per hour to partners at a small firm with over 25 years of litigation experience in a case that was not "so complicated as to warrant application of a higher-than-usual fee").  The high end of rates for civil rights attorneys is ordinarily about $400 per hour and is rarely above that rate except for counsel with significantly more than a decade of litigation experience and in "unusually difficult and complex cases."  Finch v. New York State Office of Children and Family Servs., 2012 WL 695419, at *4–*5 (S.D.N.Y. Mar. 5, 2012) (ultimately awarding $450 for solo practitioner with 42 years of relevant experience).[7]

---

[7]   Although Finch involved rates for the Southern District of New York, courts have recognized that the prevailing market rates for the Eastern District are not higher.  See Simmons, 574 F.3d at 177 (noting that "competent counsel in the Eastern District

As Judge Gleeson noted in Hugee, "[t]he highest rates in this district are reserved for expert trial attorneys with extensive experience before the federal bar, who specialize in the practice of civil rights law and are recognized by their peers as leaders and experts in their fields." Id., 2012 WL 1096086, at *13 (citing cases).  The rates awarded at the high end have ranged from $375 to $450 per hour for attorneys having considerably more experience than plaintiff's counsel.  See Luca v. County of Nassau, 698 F.Supp.2d 296, 301 (E.D.N.Y. 2010) (awarding rate of $400 per hour to partner with over 25 years of experience in civil rights cases and recognized as an authority in his specialty); Thorsen v. County of Nassau, 2011 WL 1004862, at *5-6 (E.D.N.Y. Mar. 17 2011) (awarding $425 per hour to "well known labor and employment attorney with 26 years of experience"); Lochren v. County of Suffolk, 2010 WL 1207418, at *3 (E.D.N.Y. Mar. 23, 2010) (awarding $450 per hour for partner with 49 years of experience); Wong v. Yoo, 2010 WL 4137532, at *2 (E.D.N.Y. Oct. 19, 2010) (awarding $375 per hour to a solo practitioner with thirty years experience, mostly in civil rights law, in a case that was pending for six years and in which plaintiff ultimately received "a partial judgment" in his favor); Olsen v. County of Nassau, 2010 WL 376642, at *4 (E.D.N.Y. Jan. 26, 2010) (awarding $375 per hour rate for partner with fourteen years of experience in civil rights and employment discrimination cases).  But see Menghi v. Hart, 745 F.Supp.2d 89, 112-13 (E.D.N.Y. 2010) (awarding requested rate of $295

_____

would produce [a comparable result] for less . . . money" than Southern District counsel).

-18-

per hour to solo practitioner with over 20 years experience in a Section 1983 and Drivers' Privacy Protection Act case that was "labor intensive").  Similarly, in Castro v. City of New York, 06-CV-2253, the case cited by plaintiff, Judge Reyes awarded an hourly rate of $450 to Jonathon Moore, a respected civil rights attorney with over 30 years of experience who is a partner in a recognized civil rights firm.  Saleem Reply Aff., Ex. F.  Judge Reyes also determined an hourly rate of $300 for an associate with eight years of experience.

Mr. Saleem and Mr. Harvis are the founding partners of their small law firm and request compensation at rates of $425 and $375 per hour, respectively.  Pl's Fee Mem. at 11, 18.  Both began their legal careers in the New York City Law Department after graduating from Brooklyn Law School, Mr. Saleem in 2001 and Mr. Harvis in 2006. Saleem Decl. at ¶¶ 3, 4; Harvis Decl. at ¶¶  at 11, 18.  Without doubt, both attorneys acquired extensive litigation experience there before starting their firm in September 2010.  Pl's Fee Mem. at 11-12, 18-19.  Mr. Saleem tried thirteen cases while in the tort division of the Law Department and an additional four civil rights trials after he transferred to the Special Federal Litigation Division in 2006.  Mr. Harvis, who was in that Division for the duration of his tenure in the Law Department, also conducted four trials.  From 2006 to 2008, both attorneys also worked with a team of other attorneys primarily on a class action brought in the Southern District of New York, McBean v. City of New York, 02 Civ. 5426 (JGK)(THK).

-19-

The parties bicker over the importance of the role that Mr. Saleem had in the McBean action and whether he held the title of supervising attorney, as claimed, or senior counsel, according to defendants.  Title, of course, is less important than experience. Mr. Saleem had had five years of experience handling tort cases before he began working on McBean in 2006, but no experience in federal court before.  While Mr. Saleem may have been given a more senior role in McBean in light of his past litigation experience, he did not begin handling civil rights cases until 2006, the same year as did Mr. Harvis.

The articles on billing rates that plaintiff presents are of limited usefulness because they do not address some of the most important factors in analyzing rates.  For instance, the New York Law Journal table, which is incomplete for many of the firms listed, contains a sampling of rates of the 250 largest firms in the country. Saleem Decl., Ex. F.  It does not correlate rates to average experience, specializations or types of cases commonly handled by the partners surveyed.  The Laffey Matrix provides even less detail, showing simply billable rates by age brackets.  Id., Ex. G.  Neither specifically addresses prevailing rates in the Eastern District of New York, let alone rates for civil rights attorneys at small firms.

The plaintiff also provides affidavits from other civil rights attorneys describing their experience litigating against Mr. Saleem or Mr. Harvis and their views of the rates in this district. In their affidavits, the other attorneys speak well of counsel's ability and

the regard in which they are held in the legal community, neither of
which has been challenged.[8]  The other attorneys support the
requested rates of both plaintiff's counsel, but none discusses any
factors relevant to this case.  They claim the rates sought by
plaintiff's counsel are reasonable primarily by referring to their
experience in making fee applications.  Suffice to say, these
attorneys have an interest in insuring that rates awarded be of a
certain level.  For example, plaintiff presents in reply the
affidavit of Alan Levine, who states that he will now be seeking
higher fees now in light of <u>Blount v. City of New York</u>, 2011 WL
8174137, at *1 (E.D.N.Y. Aug. 12, 2011).  However, the Second Circuit
affirmed a fee award to him based on an hourly rate of $375, in the
appeal of <u>Wong v. Yoo</u>, which it found properly reflected rates in
this district.  <u>See</u> <u>Wong v. Mangone</u>, 450 Fed. App'x. 27, 32 (2d Cir.
2011).  Moreover, in <u>Blount</u>, Judge Cogan awarded a rate of $425 per
hour to an attorney with over fifteen years of experience, in part,
because it was a "more complicated than the usual Section 1983 case."

Other than Joel Berger, a practitioner with 43 years of
experience, neither the supporting affiants nor Messrs. Harvis and
Saleem mention rates that they charge regular, paying clients.[9]  In

---

[8]  Judge Melançon commented after the conclusion of trial that he
"appreciate[d] the way the lawyers in this case conducted
themselves."  Trial Tr. dated Sept. 22, 2011 at 38.

[9]   From this Court's experience, in most, if not all, cases
involving Section 1983 claims against the New York City Police
Department, counsel undertakes representation on a contingency
fee basis, subject to any recovery of fees pursuant to Section
1988.  As a practical matter, there may be no actual prevailing
market rate in the community for cases such as this.  However,

any event, all of the other attorneys have more experience litigating
civil rights cases than Mr. Saleem or Mr. Harvis.  Fred Lichtmacher
has 13 years' experience, Jon Norinsberger has almost 20 years and
Alan Levine has over 30 years.  Jeffrey Rothman, who supported Mr.
Harvis's request for an hourly rate of $375, has been practicing
civil rights law since 2001.  In 2010, Mr. Rothman was awarded an
hourly rate of $350 in a case in the Southern District of New York.
Tucker v. City of New York, 704 F.Supp.2d 347, 361 (S.D.N.Y. 2010).

Even though there is no dispute that both Mr. Saleem and Mr.
Harvis are capable attorneys, they should be compensated at hourly
rates in line with the reasonable fees in this district and which a
reasonable paying client would be willing to pay.  After considering
counsel's experience, including Mr. Saleem's experience as an
instructor in the field and the arguments presented, I find, based on
my knowledge of billing rates in this district, that a reasonable
rate for Mr. Saleem is $350 per hour and $285 per hour for Mr.
Harvis.  While both are well respected, neither has reached the
stature of other civil rights attorneys with 20 or more years of
experience who were awarded the rates they seek.  Were a client
willing to pay the rates they claim, the client could retain the
services of attorneys with considerably greater experience.

I further recommend that the hours billed for travel should be
awarded at 50% of these rates, as proposed by plaintiff.  Finally, I

---

courts must keep in mind that "a 'reasonable' fee is a fee that
is sufficient to induce a capable attorney to undertake the
representation of a meritorious civil rights case." Perdue, 130
S.Ct. at 1672-73.

find that the $80 per hour rate requested for paralegal work appears reasonable and has not been challenged.  See, e.g., Finch, 2012 WL 695419, at *4 n. 45 (awarding uncontested $125 per hour paralegal rate); Menghi, 745 F.Supp.2d at 112 (awarding uncontested $80 per hour paralegal rate).

III. Other Factors:  Degree of Success

    Defendants contend that the Court must reduce the fee award in light of plaintiff's small recovery of $600, which they characterize as de minimis, and his failure to prevail on some claims.  The Supreme Court has made clear that plaintiffs who receive technical or nominal damage awards may rightfully be deemed prevailing parties, but, as a general matter, are not entitled to attorneys' fees because an award of nominal damages shows that such plaintiffs failed "to show actual, compensable injury."  Farrar, 506 U.S. at 113-114.  Thus "fee awards are not appropriate where, having failed to capture compensatory or punitive damages, a plaintiff wins only the moral satisfaction of knowing that a federal court concluded that their rights had been violated."  Pino v. Locascio, 101 F.3d 235, 238 (2d Cir. 1996) (internal brackets and quotations omitted); see also Millea, 658 F.3d at 168.

    Nonetheless, the fact that "compensatory damages awarded by the jury may have been modest does not automatically render them 'nominal' or 'de minimis.'" Brown, 2011 WL 5118438, at *3.  Even a minor award represents a finding that a plaintiff has suffered actual injury, albeit less than plaintiff believes that he suffered.

-23-

See Millea, 658 F.3d at 168 (faulting district court for conflating a small damages award of $612.50 with a "de minimis victory").  This is particularly true where, as here, the jury was specifically instructed that they could award nominal damages in the amount of one dollar if they found that one or more defendants had violated plaintiff's constitutional rights but that he suffered no injury in spite of this violation.  Trial Tr. dated Sept. 21, 2011 at 83; see Brown, 2011 WL 5118438, at *3.

Courts in this Circuit have consistently recognized that even modest awards may "help to protect the civil rights of others." Morris v. Eversley, 343 F.Supp.2d 234, 248 (S.D.N.Y. 2004); see also Anderson v. City of New York, 132 F.Supp.2d 239, 242-43 (S.D.N.Y. 2001) (modest damage awards in police misconduct cases serve a public purpose because such lawsuits are "often the only tool reasonably available to vindicate society's interest in ensuring that those who enforce the law also abide by it") (internal citations omitted).  As the Second Circuit recognized, Section 1988 "was enacted in part to secure legal representation [for those] whose constitutional injury was too small, in terms of expected monetary recovery, to create an incentive for attorneys to take the case under conventional fee arrangements." Kassim v. City of Schenectady, 415 F.3d 246, 252 (2d Cir. 2005).

Most recently, the Second Circuit in Millea emphasized that courts should not reduce fees simply because of the amount of damages awarded on a party's claim.  See id., 658 F.3d at 168.  Citing

-24-

Perdue, 130 S.Ct. at 1673-74, the Second Circuit noted that "[a]bsent a purely technical victory in an otherwise frivolous suit, litigation outcomes are only relevant to fee award calculations when they are a direct result of the quality of the attorney's performance."  Millea, 658 F.3d at 168.  Adjustments for attorney performance should ordinarily be made in determining the lodestar and in "rare" or "exceptional" circumstances where an adjustment is merited, the Court must "link such adjustments to specific actions of the attorney that indicate a level of performance not accounted for in the market".  Id.; see also Brown, 2011 WL 5118438, at *5 (citing Millea, declining to reduce the requested hourly rate where plaintiff "was awarded only modest damages" and "[n]o suggestion has been or indeed could be made that the representation afforded by plaintiff's counsel was in any way substandard"); but see Hofler v. Family of Woodstock, Inc., 2012 WL 527668, at *6 (N.D.N.Y. Feb. 17, 2012) (reducing plaintiff's attorneys' fees award to $88,000 because plaintiff "had somewhat limited success in this matter").

At trial, plaintiff suggested that the jury award $1000 for each of the 17 hours Mr. Fryar spent in custody, plus $5000 in punitive damages.  Trial Tr. dated Sept. 21, 2011 at 30-31.  Although the jury's actual award of $100 in compensatory damages and $500 in punitive damages falls short of plaintiff's requested relief, it nonetheless reflects the jury's conclusion that plaintiff suffered damages and that defendant Zhen acted "with malice or willfulness or with callous and reckless disregard to [plaintiff's] safety or rights."  Trial Tr. dated Sept. 21, 2011 at 32.  The verdict, like

the award of $612.50 in <u>Millea</u>, "was not a derisory or contemptuous rejection by the jury." <u>Millea</u>, 658 F.3d at 168.

Furthermore, the fact that the jury awarded punitive damages is significant since such an award "serve[s] two important public interests: deterring future misconduct by defendants and others like them, and punishing the defendants for their misconduct." <u>Schwenk v. Kavanaugh</u>, 1998 WL 259907, at *3 (N.D.N.Y. May 14, 1998).  For this reason, "the punitive damage award dissociates plaintiff's victory from those which are classified as merely technical or de minimis." <u>Id.</u>

I therefore recommend that no adjustment be made to the fee award because of the amount of the plaintiff's award, since there is no dispute that the amount was not related to performance of counsel. Clearly, plaintiff has succeeded, at least in part, in vindicating his civil rights and promoting the public interest.

I also recommend that there be no reduction of the fee award because plaintiff did not prevail on certain claims.  As the Supreme Court noted, "[w]here a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised." <u>Hensley</u>, 461 U.S. at 1943.  Plaintiff succeeded in proving only his false arrest claims against two defendants and received punitive damages.  However, the remaining claims he asserted at trial of excessive force, failure to intervene and assault and battery all arose from the encounter resulting in

plaintiff's arrest.  Because "all of [plaintiff's] claims for relief
'involved a common core of facts' . . . so that 'much of counsel's
time was devoted generally to the litigation as a whole,' . . . there
should be a fee award for all time reasonably expended."  LeBlanc-
Sternberg v. Fletcher, 143 F.3d 748 at 762 (2d Cir. 1998) (quoting
Hensley, 461 U.S. at 435).

    B.  Expenses

    Plaintiff also requests $1,096.62 for non-taxable expenses
incurred in this litigation.  The expenses claimed are:  $350 filing
fee, $62.50 for a rental car to inspect the site of the incident,
$84.12 for various legal supplies and $600 for a "trial schematic of
intersection prepared by architect."  Billing Invoice at 1, 15, 16;
Reply Invoice at 1.  Defendants do not object to any of these
expenses, all of which appear to be reasonable.  However, the parties
stipulated to settlement of taxable costs, which expressly provided
that "no further claim for taxable costs arising out of this action
shall be made by or on behalf of plaintiff at any time in the
future."  Stip. of Settlement at 2.  Because filing fees are taxable
costs, see, e.g., General Nutrition Inv. Co. v. General Vitamin
Centers, Inc., 817 F.Supp.2d 66, 76 (E.D.N.Y. 2011); Benson v.
Quicknowledge, Inc., 2010 WL 1930970, at *4 (N.D.N.Y. May 10, 2010),
plaintiff may not recover it in light of his agreement not to seek
further taxable expenses.  Therefore, I recommend that plaintiff be
awarded expenses of $746.62, an amount that does not include the
filing fee.

In sum, I recommend that plaintiff's counsel be compensated for (1) 140.5 hours by Mr. Saleem at $350 per hour and 10 hours of travel time at $175 per hour, (2) 89.3 hours by Mr. Harvis at $285 per hour and 7 hours of travel time at $142.50 per hour, (3) 5.8 hours at $80 per hour for paralegal work and (4) $746.62 in expenses, for a total of $78,583.62.

<u>CONCLUSION</u>

For the foregoing reasons, I recommend that plaintiff be awarded a total of $78,583.62 in fees and expenses.

This report and recommendation will be electronically filed on this date.  Any objections to this report and recommendation must be electronically filed, with a courtesy copy sent to Judge Melançon and the undersigned, by September 10, 2012.  Failure to file objections within the specified time waives the right to appeal.  <u>See</u> 28 U.S.C. Section 636(b)(1); Fed. R. Civ. P. 72(b).

**SO ORDERED.**

Dated:    Brooklyn, New York
          August 22, 2012

                              /s/_____
                              MARILYN D. GO
                              UNITED STATES MAGISTRATE JUDGE